150 N.J. Super. 96 (1977)
374 A.2d 1246
J.I. KISLAK, INC., PLAINTIFF-APPELLANT,
v.
TRUMBULL SHOPPING PARK, INC., A DELAWARE CORPORATION, AND THE FROUGE CORPORATION, A DELAWARE CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 2, 1977.
Decided May 18, 1977.
*97 Before Judges CARTON, KOLE and LARNER.
Mr. Frederick M. Testa argued the cause for appellant.
Mr. Dominick A. Mazzagetti argued the cause for respondents (Messrs. Lum, Biunno & Tompkins, attorneys).
The opinion of the court was delivered by LARNER, J.A.D.
The issue on this appeal is whether the courts of New Jersey may constitutionally acquire in personam jurisdiction over defendant, a nonresident corporation. The trial court dismissed the complaint for lack *98 of jurisdiction and plaintiff appeals. The legal principles dealing with exercise of long-arm jurisdiction have been articulated in the landmark opinions in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), which have subsequently been expanded and applied in a multitude of cases in this State and other jurisdictions. See, e.g., Avdel Corp. v. Mecure, 58 N.J. 264 (1971); J.W. Sparks & Co. v. Gallos, 47 N.J. 295 (1966); Roland v. Modell's Shoppers World of Bergen Cty., 92 N.J. Super. 1 (App. Div. 1966).
New Jersey has through its long-arm rule adopted a judicial policy which permits service on nonresident defendants to the outer limits of the due process requirements of the United States Constitution. See R. 4:4-4(c)(1); Avdel Corp. v. Mecure and Roland v. Modell's Shoppers World of Bergen Cty., supra. Although this concept has resulted in a flexible and indulgent view leading to exercise of jurisdiction against nonresidents in many cases, nevertheless we are constrained by the caveat in Hanson v. Denckla, supra, which emphasizes:
But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456, 1459. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the "minimal contacts" with that State that are a prerequisite to its exercise of power over him. [357 U.S. at 251, 78 S.Ct. at 1238, 2 L.Ed.2d at 1296]
A further exploration of the development of the law on this subject would be of no value, for the unresolved question in each case is not the statement of the principles of *99 law involved but rather the application of those principles to a particular fact complex.
Plaintiff J.I. Kislak, Inc. (Kislak) claims commissions due under an agreement executed in 1962 between it and Trumbull Shopping Park, Inc. (Trumbull) whereby Kislak was retained as an exclusive renting agent for stores in a shopping center developed by Trumbull. This agreement was a sequel to a similar 1960 agreement which resulted in Kislak obtaining Korvettes as the major tenant in the complex. Commissions were payable over a number of years during the terms of the respective leases. Defendant Trumbull paid commissions until 1970, at which time it discontinued any further payments under the agreement and thereby inspired Kislak to institute this lawsuit.
The written agreement, a culmination of defendant's solicitation of plaintiff in Connecticut, was executed by both parties in Bridgeport, Connecticut, and involved defendant's real estate development located in Connecticut. Defendant Trumbull is a Delaware corporation having its principal office in Bridgeport, Connecticut, while Kislak is a New Jersey corporation with its principal office in Newark. The agreement specifically provides that it is to be controlled by the laws of the State of Connecticut.
Affidavits filed with the trial court establish without contradiction that Trumbull has never entered the State of New Jersey in connection with the execution or performance of the agreement through any of its officers or employees. Similarly, defendant has had no contact with this State through the conduct of any type of business herein or through the possession or ownership of any real estate, offices, places of business or the presence of personnel or representatives. In essence, defendant has had no direct contact whatever with the State of New Jersey in connection with the agreement or with any of its other pursuits.
Plaintiff urges that the "minimum contacts" criterion of International Shoe, and Hanson v. Denckla, supra, is satisfied *100 through the route of "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson, supra, 357 U.S. at 253, 78 S.Ct. at 1240, 2 L.Ed.2d at 1298. The factual basis for this contention is that Kislak made many contacts with prospective tenants by letters and telephone calls emanating from its New Jersey office and received many inquiries from such prospects at that office. It is argued that this aspect of Kislak's performance was contemplated by the agreement and anticipated by Trumbull when it entered into the agreement.
In contrast to these New Jersey-based activities of Kislak, Trumbull points to the fact that all meetings between its representatives and prospective tenants or Kislak's representatives took place in Connecticut or New York and never in New Jersey.
The foregoing facts place in sharp focus the question whether the described part performance of Kislak's contractual services in New Jersey suffices per se as the "minimal contacts" required for the constitutional exercise of jurisdiction. The answer to this question brings into play the doctrine which equates the effects in the forum state caused by the acts of defendant elsewhere with the criterion of "minimal contacts" of defendant within the forum state. This doctrine is codified in 1 Restatement 2d, Conflict of Laws, § 50 at 178-179:
A state has power to exercise judicial jurisdiction over a foreign corporation which causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of these effects and of the corporation's relationship to the state makes the exercise of such jurisdiction unreasonable.
See also, Caveat and Reporter's Note under Restatement 2d, supra at § 37.
As observed in Avdel Corp. v. Mecure, supra, 58 N.J. at 272; Resin Research Lab., Inc. v. Gemini Roller *101 Corp., 105 N.J. Super. 401, 404 (App. Div. 1969), and Corporate Dev. Spec., Inc. v. Warren-Teed Pharm., Inc., 99 N.J. Super. 493 (App. Div.), on remand 102 N.J. Super. 143, 149-150 (App. Div.), certif. den. 52 N.J. 535 (1968), jurisdiction will be accepted where a nonresident party to a contract anticipated or should have anticipated that his conduct would have significant effects in the forum state. Nevertheless, the application of this doctrine is tempered by the oft-repeated condition that the nature and quality of these effects in the forum state must be so significant that they will not make the exercise of jurisdiction unreasonable. See Restatement 2d, supra.
We return to the words of Chief Justice Warren in Hanson v. Denckla, supra:
The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. [357 U.S. at 253, 78 S.Ct. at 1239, 2 L.Ed.2d at 1298]
See also, DeLear v. Rozel Packing Corp., 95 N.J. Super. 344 (App. Div. 1967); Webb v. Stanker and Galetto, Inc., 84 N.J. Super. 178 (App. Div.), certif. den. 43 N.J. 263 (1964), cert. den. 380 U.S. 907, 85 S.Ct. 888, 13 L.Ed.2d 795 (1965).
Our assessment of the facts herein does not lead to the conclusion that defendant, by the mere execution of the contract with a New Jersey corporation and probable anticipation that some of plaintiff's activities in performing the contract might be carried out in its New Jersey office, is equivalent to the status of a party who has "purposefully availed itself of the privilege of conducting activities" within New Jersey.
The truly significant effects of the contract were contemplated and in fact took place in New York and Connecticut, *102 where the property was exhibited to prospective tenants and leases negotiated, prepared and executed, which in turn created plaintiff's right to a cause of action. The overall kernel of the relationship between the parties consisted of real estate in Connecticut, leased to tenants who committed themselves through meetings with Trumbull and Kislak representatives either in New York or Connecticut, and which generated commissions under a contract by which both parties designated Connecticut law as the controlling guide of their relationship. See DeLear v. Rozel Packing Corp., supra, 95 N.J. Super. at 349-351.
It is noteworthy that Kislak became the exclusive agent by going beyond the state of its incorporation and principal office and soliciting the retainer at defendant's base in Connecticut. Trumbull did not come into New Jersey to seek the services of Kislak. It is fair to assume from this, the terms of the agreement and the other contacts with Connecticut that Kislak as well as Trumbull anticipated that any contractual dispute would be litigated in the courts of Connecticut and not those of New Jersey.
The mere circumstance that Kislak saw fit to conduct some of its preliminary solicitation of prospective tenants through its New Jersey office rather than any other office or locale is too slim a reed to support the conclusion that defendant by its mere execution of the contract caused significant effects in this State. See Avdel Corp. v. Mecure, supra, 58 N.J. at 271; J.W. Sparks & Co. v. Gallos, supra, 47 N.J. at 303; cf. McGee v. International Life Ins. Co., supra.
Kislak relies mainly on two New Jersey precedents involving contract actions, namely, J.W. Sparks & Co. v. Gallos, supra, 47 N.J. 295, and Corporate Dev. Spec., Inc. v. Warren-Teed Pharm., Inc., supra, 102 N.J. Super. 143.[1] *103 Both of these cases are distinguishable on their facts.
In J.W. Sparks & Co. defendant, a New Jersey resident, ordered through his broker purchases of stock on the over-the-counter market in the City of New York. These purchases were accomplished by the broker's New York office and charged to defendant's brokerage account, with confirmations forwarded from the New York office to defendant in New Jersey. Defendant refused to pay for the purchased shares because of a price dispute. As a result plaintiff broker sold the shares on the New York market and brought suit in the courts of New York, with a resulting default judgment for its net loss. Our Supreme Court held that New York had properly exercised jurisdiction in a constitutional sense over defendant, who was served in accordance with the long-arm provisions of the applicable New York statute. This conclusion was based in the main on the fact that the entire transaction of the purchase ordered by defendant took place through the New York office of the broker on a New York exchange within the knowledge and contemplation of defendant, and that such a substantial connection with the State of New York was sufficient to meet constitutional tests. It was found that the exercise of jurisdiction by New York would not involve "fundamental unfairness" to the New Jersey defendant.
In Corporate Dev. Spec., Inc. this court sustained New Jersey jurisdiction over a Delaware corporation with its principal place of business in Ohio. Plaintiff was a business broker which carried on its business in New Jersey and performed all or most of its work under the contract in the New Jersey office. In addition, defendant had substantial contacts with New Jersey unrelated to the contract at issue, including representatives and sales within this State. The last paragraph *104 of the opinion reflects the factual base for the conclusion, namely:
[T]he combined effect of defendant's commercial penetration of New Jersey to the extent indicated above, of the relation of the contract sued upon to significant effects envisaged in its negotiation to take place in this State, of the interest of this State in affording a forum to one of its citizens, and of the relative convenience and inconvenience to the parties of litigating this claim in New Jersey rather than in Ohio or Delaware  conduces to the view that acceptance by this State of jurisdiction in this case is consonant with the criteria of substantial justice, fair play and reasonableness which underlie due process. [102 N.J. Super. at 156]
We do not consider J.W. Sparks & Co. and Corporate Dev. Spec., Inc. controlling in view of the different fact patterns and the degree of activity in the forum state. As already noted, in the case at bar the only straw upon which judicial jurisdiction can rest is the preliminary activities of Kislak in soliciting prospects by letters and telephone calls emanating from its New Jersey office. All other significant and substantive activities took place elsewhere. The "effects" doctrine necessarily involves an evaluation of the degree of contractual activity in this State derived from the evidence of the nature and quality of the acts herein. The limited activity by Kislak in New Jersey, in our opinion, does not reach the level of significance required by the doctrine expressed in the cited cases or other authorities on the subject.
From a broader aspect, the ultimate test of constitutionality is whether the maintenance of the action in this jurisdiction would offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, supra, 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 102. The particular facts involved herein which relate to (1) the place of solicitation of the contract, (2) the contents of that contract, (3) the locale of the subject matter involved, (4) the significant performance by plaintiff outside the State of New Jersey, (5) the consent that Connecticut law apply and (6) the total absence of activities by Trumbull in New Jersey, *105 lead us to conclude that the maintenance of the suit in New Jersey would indeed offend "traditional notions of fair play and substantial justice." The trial judge therefore properly dismissed the action.
In view of our conclusion on the jurisdiction issue we do not reach the issue of forum non conveniens. Nevertheless, as another facet supporting the refusal to entertain jurisdiction, we note that the proximity of Connecticut to New Jersey will obviate any substantial inconvenience or expense to plaintiff in prosecuting its cause of action in the jurisdiction of Connecticut. See Corporate Dev. Spec., Inc. v. Warren-Teed Pharm., Inc., supra, 102 N.J. Super. at 155-156.
Affirmed.
NOTES
[1] Tort cases involve different policy considerations which dictate a special interest for the state of plaintiff's domicile to exercise jurisdiction. See J.W. Sparks & Co. v. Gallos, supra, 47 N.J. at 302; Corporate Dev. Spec., Inc. v. Warren-Teed Pharm., Inc., supra, 102 N.J. Super. at 153, n. 4; Restatement 2d, Conflict of Laws, § 36 (Comment); cf. Blessing v. Prosser, 141 N.J. Super. 548 (App. Div. 1976).