153 N.J. Super. 312 (1977)
379 A.2d 517
MOON CARRIER, A NEW JERSEY CORPORATION, PLAINTIFF,
v.
RELIANCE INSURANCE COMPANY, A FOREIGN CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
NEW YORK TELEPHONE COMPANY, A FOREIGN CORPORATION, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided September 16, 1977.
*314 Mr. Raymond J. Fleming for defendant and third-party plaintiff (Messrs. Feuerstein, Sachs & Maitlin, attorneys).
Mr. Francis X. Kennelly and Mr. Kenneth J. Quinn (Messrs. Schumann, Hession, Kennelly & Dorment, attorneys) and Mr. Stewart S. Sherman, a member of the New York Bar, for third-party defendant.
No appearance for plaintiff.
YOUNG, J.C.C., Temporarily Assigned.
New York Telephone Company, third-party defendant, moves for an order *315 setting aside service of process at its New York office by certified mail pursuant to R. 4:4-4(c)(1), commonly known as the "long arm" rule. The movant also prays for an order dismissing the third-party complaint. The motion, originally heard on September 17, 1976, was stayed pursuant to a letter opinion and order of this court allowing defendant and third-party plaintiff, Reliance Insurance Company, to pursue discovery directed to the issue of whether the courts of New Jersey have in personam jurisdiction over the telephone company. At the continued hearing date of the motion on February 25, 1977 the court requested that counsel for third-party defendant provide further information regarding the nature and extent of the relationship of New York Telephone Company to the parties, the forum and the litigation. Discovery having now been completed, and the requested additional information having been received by this court, the motion is ready for determination.
Plaintiff Moon Carrier filed suit against its insurance carrier, Reliance Insurance Company, to recover under its policy for losses arising from interruption of business. That interruption is allegedly traceable to a fire on February 27, 1975 on the premises of the New York Telephone Company. Defendant Reliance Insurance Company impleaded the New York Telephone Company, asserting a right of subrogation to recover any sums paid to plaintiff, contending that the losses, if any, were caused by the negligence of the New York Telephone Company. In its answer the telephone company pleaded as a Second Separate Defense lack of jurisdiction, which defense is tested by the pending motion.
The parties agree, and the court concurs, that the law of New Jersey regarding in personam jurisdiction over foreign corporations is predicated upon a refinement and elaboration of the principles enunciated by the Supreme Court of the United States in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). New Jersey, *316 by the adoption of R. 4:4-4 and judicial construction thereof, has opted for an exercise of jurisdiction over nonresidents, both corporate and individual, and in respect of both commercial and noncommercial litigation, to the utmost limits permitted by the due process requirements of the United States Constitution. J.I. Kislak, Inc. v. Trumbull Shopping Park, Inc., 150 N.J. Super. 96 (App. Div. 1977).
International Shoe established that the central concern of the inquiry into personal jurisdiction is the relationship among defendant, the forum, and the litigation. "Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." Id. 326 U.S. at 319, 66 S.Ct. at 160. The most recent decision of the United States Supreme Court not only reaffirmed these principles but held them applicable to all assertions of state court jurisdiction, whether in personam, in rem or quasi in rem. Shaffer v. Heitner, ___ U.S. ___, ___, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).
The initial determination for the court is whether the cause of action sued upon is related to the contacts. However, International Shoe, supra, 326 U.S. at 318, 66 S.Ct. 154, and subsequent pronouncements such as reported in Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), have established that corporate activities in the forum state may be sufficiently "continuous and systematic" to permit the forum to entertain the cause of action even when unrelated to the "contacts." In the more typical case, where the cause of action arises from the foreign corporation's "activity" in the forum state, a single or isolated act within the forum may suffice to satisfy due process if the act has a "substantial connection" with the forum state. See McGee, supra, 355 U.S. at 223, 78 S.Ct. 199; Gelineau v. New York Univ. Hospital, 375 F. Supp. 661, 665 (D.N.J. 1974).
*317 The resolution of challenges to jurisdiction over nonresidents is particularly fact-sensitive. The opinion of Judge Conford, writing for the Appellate Division in Corporate Dev. Spe., Inc. v. Warren-Teed Pharm., Inc., 102 N.J. Super. 143 (1968), illustrates in the passage which follows the judicial approach to such challenges:
Chief Justice Traynor of the California Supreme Court has in Fisher Governor Company v. Superior Court, 53 Cal.2d 222, 1 Cal. Rptr. 1, 347 P.2d 1, 3 (Sup. Ct. 1959), provided a useful catalogue of some of the considerations which may pertinently be weighed in the assessment of due process in this area. Those so listed which are or may be relevant here are: (a) the interest of the state in providing a forum for its residents; (b) the relative availability of evidence and the burden of prosecution and defense in one place rather than another; (c) the ease of access to an alternative forum; and (d) the extent to which the cause of action arose out of defendant's local activities. To these must be added, for present purposes: (a) the substantiality of business activities of defendant in the State and how systematic and continuous they are; see Essential Const. Co. v. Royal Concrete Fireproofers, 84 N.J. Super. 289 (App. Div. 1964); cf. Sanders Associates, Inc. v. Galion Iron Works & Mfg. Co., 304 F.2d 915 (1 Cir.1962); as well as (b) the independence or exclusivity of its selling agents in the state in relation to the defendant, Fisher Governor Company v. Superior Court, supra; and (c) whether any isolated or casual activities of the defendant have caused expectable consequences of significant concern in the state, see Haldeman-Homme Mfg. Co. v. Texacon Industries, Inc., 236 F. Supp. 99 (D.C. Minn. 1964). [at 149]
Having explored the pertinent factors to be considered in determining the scope of due process in this area, this court proceeds to an examination of the relationship between the telephone company and plaintiff Moon Carrier, as well as the contacts between the utility and the State of New Jersey in general.
From the affidavits supplied by New York Telephone it appears that in February 1975 Moon Carrier was provided with "foreign exchange telephone service," which is described as essentially a private line between the customer's premises in Clifton, New Jersey, and the New York Telephone Company Central office in New York. Plaintiff was *318 provided with three subscriber numbers in the Manhattan Telephone Directory, all of which were New York City numbers. When persons called the telephone numbers in New York the telephones in Moon Carrier's Clifton office would ring. Thus, the Clifton subscriber was furnished service in Clifton as if it were physically present in New York.
Although Moon Carrier's original request for foreign exchange service was solicited by or handled by a New Jersey Bell Telephone salesman, who transmitted the order through a New Jersey "intergroup" to a counterpart "inter-group" in New York, Moon Carrier became a customer of the New York Telephone Company. There is an economic inducement for salesmen of New Jersey Bell to solicit subscribers for the foreign exchange service offered by New York Telephone in that the revenues derivative therefrom are shared with New Jersey Bell. New York Telephone's billheads were mailed directly from New York to Moon Carrier's Clifton office. If unpaid, New York Telephone would first terminate the service and then sue. If jurisdiction over the customer could not be obtained in New York, then New Jersey counsel would be retained to file suit in New Jersey.
Turning to the second factual question, what are the points of contact between New York Telephone and the forum state? New York Telephone was incorporated in 1896 in the State of New York and is qualified to transact business in New York and Connecticut.[1] Its principal offices are *319 located at 1095 Avenue of the Americas, New York, New York, and its corporate records and some business records are kept at that address. The company's general agent for service is the Secretary of State of New York, and it has no registered agent in New Jersey, nor any officer or other agent here to accept service of process. The company has no bank accounts here, does not rent office space or equipment in New Jersey, nor does it rent or lease property in this State. The company does not directly sell or solicit business in New Jersey but does acquire subscribers through salesmen of New Jersey Bell. New York and Connecticut are the only states to which it pays franchise tax and/or income tax. Finally, the company maintains inventory only in the State of New York and does not own cables or telephonic facilities in New Jersey.
The last point, the territorial limitations of the physical facilities of New York Telephone, is strongly emphasized by the movant and is graphically illustrated by the statement that the company's telephone cables terminate at the mid-line of the Hudson River, where they interconnect with cables and facilities owned and operated by the New Jersey Bell Telephone Company. Indeed, New York Telephone takes the argument one step further, and urges that in its capacity as a public entity it is required by the Federal Communications Commission, acting pursuant to the Communications Act of 1934 (47 U.S.C.A. § 201(a)), to interconnect its lines to lines of other telephone companies, even if it does not desire to make such connection.
Notwithstanding the questionable "physical" contacts between New York Telephone Company and New Jersey, it cannot be denied that third-party defendant collects considerable revenue from its New Jersey subscribers. In their most recent correspondence to this court counsel for the *320 telephone company states that as of the end of March 1977 New York Telephone Company furnished services for and billed 5,432 subscribers in New Jersey, 5,431 of whom were foreign exchange customers (the other subscriber being a "private line customer"). For the month of March 1977 the 5,431 foreign exchange subscribers were billed in the total sum of $2,430,270 of which $828,402 would be allocated to New York Telephone, the remainder being divided between New Jersey Bell and the American Telephone & Telegraph Company. New York Telephone advises that the net revenue represents approximately .2% of its total operating revenues for the month of March 1977.
Although there is substantial agreement upon the facts as presented, the parties differ sharply in their application of the law to the facts. The telephone company maintains that it would be substantially unjust and a transgression of due process to subject it to in personam jurisdiction under the International Shoe test because it has no contacts, not even "minimal contacts," with the forum state. Secondly, under the McGee rationale, the telephone company asserts that plaintiff's claim must be predicated on an alleged wrong done to plaintiff within the forum state arising out of a single or isolated act done by defendant within the forum. The company asserts that the service performed by it was performed in a foreign state, and the negligence on the part of telephone company, if any, occurred in New York and not in New Jersey. Third-party defendant concludes that the alleged wrong to plaintiff, and the transaction giving rise to the alleged wrong, had no substantial connection with New Jersey.
In opposition to the motion, Reliance Insurance Company advances two arguments based on its interpretation of the facts. The first argument is that the American Telephone and Telegraph Company is the "parent" corporation of New York Telephone Company, that the latter could not function independently of its "parent," and the presence of many offices of A.T. & T. in New Jersey provides sufficient minimum *321 contacts and ties with this State to justify jurisdiction over third-party defendant. Reliance cites Hoagland v. Springer, 75 N.J. Super. 560 (App. Div. 1962), aff'd 39 N.J. 32 (1962), which emphasized that the economic realities of the situation must be examined. That case held that if the existence of a foreign corporation relies and depends on sister or parent corporations which are present within the forum and which form a single, cohesive economic unit, then personal jurisdiction may be exercised over that foreign corporation.
In its second argument, Reliance Insurance Company focuses on the "foreign exchange telephone service" provided by third-party defendant and urges that the very definition and uniqueness of such service, which New York Telephone Company knew would have substantial effects in New Jersey, are sufficient contact with this forum to support in personam jurisdiction, citing Unicon Investments v. Fisco, Inc., 137 N.J. Super. 395, 403 (Law Div. 1975).
In reply, New York Telephone Company relies on the reasoning and authority of Magyar v. American Tel. & Tel. Co., 88 N.J. Super. 18 (Law Div. 1965). In short, New York Telephone urges that it is a separate and independent corporate entity from its parent and sister corporations and that any jurisdiction which New Jersey may exercise over the parent corporation is insufficient to confer jurisdiction over the subsidiary. Finally, New York Telephone contends that as a public utility it is required by federal regulations to furnish plaintiff with the service aforementioned and by virtue thereof is not "purposely availing itself of the privilege" of conducting business in New Jersey. Indeed, the alleged absence of "voluntariness" formed the crux of counsel's position during argument on the motion.
With regard to the first argument of Reliance, the relevant inquiry is whether the movant and the parent corporation, A.T. & T., so operate as a single entity, or a unified and cohesive economic unit, that when the parent is within the venue of this court a member of the system *322 is also within this court's jurisdiction. Hoagland v. Springer, supra, 75 N.J. Super. 560; San Antonio Tel. and Tel. Co., Inc. v. American Telephone, 364 F. Supp. 1157 (W.D. Texas 1973), aff'd 499 F.2d 349 (5 Cir.1974). It is conceded that New York Telephone Company is a wholly-owned subsidiary of A.T. & T., although it has been held that when one corporation owns 100% of another corporation's stock that fact does not raise a conclusive presumption of subservience. Magyar v. American Tel. & Tel. Co., supra, 88 N.J. Super. at 24. It is also admitted that the president of A.T. & T. is a member of the board of directors of New York Telephone Company. However, the movant vigorously asserts that its board of directors, and not that of A.T. & T., controls the operation of the company, including the selection and overall supervision of executive and management personnel.
The relationship between New York Telephone and A.T. & T., while predicated upon formal division of revenue and licensing contracts, is in fact a close working relationship in which New York Telephone depends upon A.T. & T. for a considerable amount of advice and assistance in the operation of its business, for the benefits of A.T. & T's research in telephonics, and for the opportunity to purchase telephones and related equipment at reasonable prices.[2] While *323 New York Telephone Company has no obligation to accept the assistance and advice of A.T. & T., it does accept it in most instances because it finds it to be sound, practical and economical. Additionally, Reliance points out that the basic mechanism of the ordinary telephone unit, as well as telephone cable and other equipment used by New York Telephone, are purchased from Western Electric, a wholly-owned subsidiary of A.T. & T., although in recent years New York Telephone has begun to purchase equipment from outside manufacturers.
Despite the documented close inter-relationship between New York Telephone and A.T. & T., this court is not persuaded that the presence of A.T. & T. in New Jersey is sufficient, in and of itself, to bring its subsidiary, New York Telephone Company, within the court's jurisdiction. The so-called "single entity" test requires that the parent over which the court has jurisdiction "so control and dominate the subsidiary as in effect to disregard the latter's independent corporate existence." Restatement, Conflict of Laws 2d, § 52, Comment (b). See also, Frazier, III v. Alabama Motor Club, Inc., 349 F.2d 456 (5th Cir.1965). The evidence presents a close question. However, this court finds factually that A.T. & T. and New York Telephone maintain their separate corporate identities, with separate boards of directors, and that the operational purposes of each are not so intertwined as to make the one unnecessary without the other. See Magyar v. American Tel. & Tel. Co., supra, 88 N.J. Super. at 24.
The facts presented do not establish the more typical commercial arrangement of an out-of-state manufacturer and local distributors which in effect constitute an economic network or empire. In such instances our courts have subjected the foreign corporation to jurisdiction in New Jersey, where *324 the wholly-dependent subsidiary was conducting business. See Hoagland v. Springer, supra, 75 N.J. Super. 560; Taca International Airlines, Inc. v. Rolls-Royce Ltd., 84 N.J. Super. 140 (Law Div. 1964). In the present case there is no evidence that A.T. & T. solicits business or procures customers on behalf of New York Telephone in New Jersey. The board of directors and officers of New York Telephone directly control the operation of that company, including matters relating to debt financing, selection of banks, preparation of budgets, payment of dividends, labor relations, insurance coverage, acquisition of real property, and purchase of equipment. New York Telephone employs approximately 80,000 employees and receives approximately 75% of its annual gross revenue from its intrastate operation as a regulated public utility in New York and Connecticut. Under the circumstances it does not appear that A.T. & T. so dominates New York Telephone as to obliterate the latter's independent corporate existence.
Turning to the second argument proposed by Reliance, does due process permit the assertion of in personam jurisdiction over the New York Telephone Company on the basis of its own acts or activities in New Jersey? Using the criteria outlined above, the court notes that while New York Telephone lacks actual "physical" contacts with New Jersey, there can be no doubt that the telephone company has numerous customers in this State, from which it derives considerable revenue. Whether or not the telephone company is "doing business" in New Jersey in the traditional sense, it is manifest that its activities are encompassed by the definition of "doing business" utilized by the Appellate Division in Corporate Dev. Spe., Inc. v. Warren-Teed Pharm., Inc., supra:

"a. What constitutes doing business.

Doing business is doing a series of similar acts for the purpose of thereby realizing pecuniary profit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts" [102 N.J. Super. at 151]
*325 Of equal importance is the fact that the cause of action which is sued upon herein (discontinuation of telephone service) arises from the business contacts of New York Telephone in New Jersey (provision of foreign exchange telephone service), for it appears that if the claim is related to the business conducted in the forum, the courts have required a lesser level of business activity than if the cause of action is unrelated to the business contacts. See Perkins v. Beuguet, supra, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). Further, in a very real sense the agreement between plaintiff and New York Telephone was a contract for services "to be rendered" in New Jersey, in that the telephone company arranged to have plaintiff's telephone ring in New Jersey even though the person placing the call dialed a New York exchange. Even if it is not conceded that the contract was to be performed in this State, the acts of third-party defendant in New York which caused effects in New Jersey may be sufficient to satisfy the "minimal contacts" required for jurisdiction. See J.I. Kislak v. Trumbull Shopping Park, Inc., supra, 150 N.J. Super. at 100, in which the following from Restatement, Conflict of Laws 2d, § 50, is quoted:
A state has power to exercise judicial jurisdiction over a foreign corporation which causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of these effects and of the corporation's relationship to the state makes the exercise of such jurisdiction unreasonable.
Jurisdiction can be based strictly on an out-of-state act having foreseeable effects in the forum state. E.g., McGee v. International Life Ins. Co., supra; Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (Sup. Ct. 1961); Restatement, Conflict of Laws 2d, § 37.
New York Telephone's principal argument against assertion of jurisdiction is that it did not "purposely avail" itself of the opportunity to engage in a commercial transaction *326 whereby it would obtain revenue from New Jersey residents, but rather that it is compelled by federal regulation to provide interstate service. The "purposely avail" language appears frequently in opinions on this subject. See Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); J.W. Sparks & Co. v. Gallos, 47 N.J. 295, 303 (1966); Avdel Corp. v. Mecure, supra, 58 N.J. 264, 273 (1971); J.I. Kislak, Inc. v. Trumbull Shopping Park, Inc., supra, 150 N.J. Super. at 101. The brief response to the telephone company's argument is that the subject matter of the suit pertains not merely to regular interstate telephone service, which is available to all telephone subscribers, but rather to a particular and unique form of service which is chosen by a relatively select group of customers. While it is clear that New York Telephone is required to provide regular interstate service, there is no evidence before the court that the telephone company is specifically required by federal authority to provide foreign exchange telephone service.
More generally, an overemphasis on the "purposely avail" language will divert the court from the basic test to be applied, which is the relationship among the forum, the litigation and the party to be subjected to the forum's jurisdiction. See Amercoat Corp. v. Reagent Chem. & Research Inc., 108 N.J. Super. 331, 341 (App. Div. 1970). As recently stated in Unicon Investments v. Fisco, Inc., 137 N.J. Super. 395 (Law Div. 1975):
We do not require the physical purposeful doing of some act within New Jersey, nor do we require the transaction of business within our state in person or through an agent. * * *
It is sufficient under Avdel Corp. v. Mecure, supra, that an out-of-state defendant enter into an agreement which he knew or should have known would have substantial effects in New Jersey. [at 402-403]
In the case at bar it cannot be doubted that New York Telephone knew or should have known that the provision of *327 foreign exchange telephone service would have "substantial effects" in New Jersey in terms of the greater business market available to Moon Carrier.
The ultimate test of constitutionality is whether the maintenance of this action in this jurisdiction would "offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, supra, 326 U.S. at 316, 66 S.Ct. at 158. Considering the magnitude of the income derived by movant in this State, the systematic and continuous nature of its contacts with New Jersey, the relationship between the contacts and the cause of action sued upon, and the substantial effects generated in New Jersey by the service provided, the maintenance of this suit in this forum would not violate the International Shoe standard. Moreover, there is no inconvenience to New York Telephone to defend this action in New Jersey. See Avdel Corp. v. Mecure, supra, 58 N.J. at 273. This holding is an application of the view articulated by Chief Justice Weintraub in Cooke v. Yarrington, 62 N.J. 123 (1973):
A more expansive view of State jurisdiction of the person was demanded by the reality that as interstate movements and transactions became commonplace State lines became less relevant to the revolution of ensuing controversies. The minimal contacts formula is imprecise and necessarily so. The controlling thought is fairness, and this permits flexibility to deal with the myriad factual patterns which emerge from our complex scene. [at 128]
Lastly, New York courts have reached a like result when a New Jersey corporation moved to dismiss. Shelton Color Corporation subscribed to a direct telephone line from New York City to its office in Hackensack, with listing in the Manhattan Directory. Affidavits disclosed 26 customers in New York with business exceeding $50,000. a year. The elements which the New York appellate court found persuasive are stated in the following passage from Bard v. Steele, 28 A.D.2d 193, 283 N.Y.S.2d 930 (App. Div. 1967):
*328 Such "minimum contacts" are not necessarily to be inferred from the fact that appellant has a substantial business with New York residents but that circumstance may be of some significance when considered with the proof of appellant's maintenance of a New York telephone line to its Hackensack office and its use of a Manhattan telephone number and listing, which facts alone constitute at least a "minimum contact" and must certainly be considered "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." [283 N.Y.S.2d at 933; emphasis supplied]
The motions of New York Telephone Company to set aside service of process for lack of in personam jurisdiction and to dismiss the third-party complaint are denied.
NOTES
[1] There is submitted portions of a License Agreement dated April 11, 1930, between the American Telephone and Telegraph Company, Licensor, and New York Telephone Company, Licensee. The Licensor conferred upon the Licensee the territory of the State of New York, part of the State of Connecticut, and "in conjunction with the New Jersey Bell Telephone Company shall have the right to use telephones licensed hereunder between any point in the Counties of Bronx, Kings, Nassau, New York, Putnam, Queens, Richmond, Rockland, Suffolk, and Westchester, * * * and any point in the Counties of Bergen, Essex, Hudson, Middlesex, Monmouth, Morris, Passaic, Somerset, Sussex and Union, all in the State of New Jersey."

It is significant that the License Agreement bears no signatory of New Jersey Bell Teelphone Company. The agreement documents the exercise of power by A.T. & T. across state lines via the device of a license.
[2] This court takes note of the national advertising of A.T. & T. in which its integration with 23 regional Bell companies is emphasized. A typical advertisement includes the following description of Bell's integrated organizational structure:

Today Bell Laboratories is responsible for research and development. Western Electric looks for  and finds  better ways to make things. The 23 regional Bell companies provide telephone service and report back their needs and the needs of their customers. And American Telephone and Telegraph Company management provides overall coordination and guidance. Some of the names are different, but the functions had been established by 1882.
Vertical integration is one name economists give to this form of corporate organization. * * * * The Atlantic, Vol. 237, No. 4, p. 8 (April 1976).
Hence the motto "Bell System."