410 A.2d 1266

## BARTHOLOMEW ASSOCIATES, INC.

v.

## TOWNHOME, INC., Appellant.

Superior Court of Pennsylvania.

Submitted March 20, 1979.

Filed Sept. 28, 1979.

Donald A. Semisch, Willow Grove, for appellant.

William A. Duh, Jr., Bethlehem, did not file a brief on behalf of appellee.

Before PRICE, SPAETH and LIPEZ, JJ.

SPAETH, Judge:

This is an appeal from an order granting appellee's motion for summary judgment.

On June 24, 1975, appellee secured a default judgment against appellant in New Jersey; it brought the present action to enforce the judgment. Appellant's answer to the complaint admitted the default judgment but pleaded in new matter that the New Jersey court had no jurisdiction over it when the default judgment was entered. After discovery, appellee moved for summary judgment, alleging that the depositions established such "contacts between New Jersey and Pennsylvania [as to] require [ ] that Pennsylvania shall give full faith and credit to the New Jersey judgment." Record at 95a. The lower court agreed, and granted the motion.

In *Bolinger v. Palmerton Area Com. Endeavor, Inc.*, 241 Pa.Super. 341, 350, 361 A.2d 676, 680 (1976), we stated:

It is well established that we can sustain a summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." . . . *The record must be examined in the light most favorable to the non-moving party.* . . . [A] summary judgment should be granted only when the case is clear and free from doubt. (Citations omitted, emphasis in original.) Examined in this light, the record may be summarized as follows.

Appellant is a real estate developer located in Willow Grove, Montgomery County, Pennsylvania. Appellee is a professional engineering firm located in Maplewood, New Jersey. Appellant had plans to build a housing complex in Upper Moreland Township, Montgomery County. Appellee first learned of appellant's plans when some of its officers interviewed one Richard Nowalk, whom they were considering hiring as the firm's accountant. Nowalk was appellant's accountant, and when he learned that appellee did consulting and planning work, he suggested appellant as a prospective client. At no time did appellant pay Nowalk for anything other than his accounting services. Record at 79a.

Before submitting a formal proposal to appellant, appellee's officers met once with appellant's attorney in Pennsylvania, and twice with Nowalk in New Jersey. Record at 29a, 54a. Both meetings with Nowalk were initiated by an officer of appellee. Record at 57a. Appellee's formal proposal called for it to "render Engineering and Architectural Services" to appellant. Record at 19a. Essentially, this meant that appellee would first prepare preliminary plans to enable appellant to make various threshold decisions about the project, and then, final plans that appellant could use to get township approval for the project. William Holleran, Vice President of appellee, signed the proposal on June 19, 1974, and delivered it to Dennis Sakelson, President of appellant, at appellant's headquarters in Pennsylvania. Sakelson signed the proposal some weeks later. Record at 33a, 60a. Sakelson testified in a deposition that he knew appellee was a New Jersey firm and "imagine[d] they did [their work] at their own facility [in New Jersey]." Record at 90a, 91a, 94a.

Both Holleran and one Clifford Johnson, who was appellee's associate principally responsible for the work done after the proposal was signed, said that the bulk of the design work was done in New Jersey, although the architectural plans were done by a firm in New York, working in association with appellee. Record at 37a, 70a, 52a. In the course of developing the plans, Johnson met with a consultant and a prospective builder in New Jersey, Record at 64a, although these meetings were without the knowledge of Sakelson. Record at 80a, 89a. From his office in New Jersey, Johnson communicated with Pennsylvania utility officials, highway officials, and a surveyor. Record at 70a, 71a, 73a. In addition, Johnson and other representatives of appellee maintained a regular correspondence with Sakelson from their New Jersey office, although all meetings between the parties took place in Pennsylvania. Record at 68a. Representatives of appellee appeared before the township authorities in Pennsylvania, after the first plans had been prepared, and appellant sought approval of the project. Record at 65a, 70a.

The lower court concluded that the New Jersey court had jurisdiction over appellant because appellee's services "were to be performed primarily in New Jersey. Numerous meetings between representatives of the two parties took place in New Jersey. In sum, [appellant] should have anticipated that their conduct would have significant effects in the State of New Jersey." Slip op. at 3.[1]

Article IV, Section 1, of the United States Constitution requires that we give "Full Faith and Credit" to the judgment of another state. Nevertheless, we need not do so where the judgment was rendered by a court without jurisdiction over the defendant. *Barnes v. Buck*, 464 Pa. 357, 346 A.2d 778 (1975). In determining whether the New Jersey court had jurisdiction over appellant, we look to New Jersey

---

1. Appellant correctly notes that this statement is in error as regards meetings in New Jersey, since it was appellee's not appellant's, version of the disputed facts that there had been such meetings. *See Bollinger v. Palmerton Area Com. Endeavor, Inc., supra.*

law. In *J. I. Kislak, Inc. v. Trumbull Shopping Park, Inc.*, 150 N.J.Super. 96, 374 A.2d 1246 (1977), the court stated:

New Jersey has through its long-arm rule adopted a judicial policy which permits service on nonresident defendants to the outer limits of the due process requirements of the United States Constitution.

In defining due process requirements, the United States Supreme Court has said that for a state to have jurisdiction over an out-of-state defendant, there must be "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citations omitted). In *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), the Court said that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Thus, in *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), where an insurance contract was sent to a resident of California by a Texas insurance company, and the resident sent premiums to Texas from his home in California, the Court held that California properly exercised jurisdiction over a suit brought on the contract by the resident against the insurance company, even though the contract was the insurance company's only connection with California. The Court stated that "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with [California]." 355 U.S. at 223, 78 S.Ct. at 201.

On the basis of these United States Supreme Court decisions, the New Jersey courts have taken an expansive view of their jurisdiction. In *Avdel Corporation v. Mecure*, 58 N.J. 264, 271, 277 A.2d 207 (1971), the New Jersey Supreme Court stated that New Jersey had jurisdiction over a nonresident party to a contract where he anticipated or should have anticipated that his conduct would have "significant" effects in the forum state. In *Elizabeth Iron Works v.*

*Kevin Construction Co.*, 155 N.J.Super. 175, 382 A.2d 648 (1976), *affirmed*, 75 N.J. 332, 382 A.2d 636 (1978), it was held that a New Jersey court had jurisdiction over a Pennsylvania defendant that had ordered steel beams from a New Jersey plaintiff, knowing that the beams were to be specifically fabricated to his order in New Jersey. The Superior Court noted that the contract was accepted in New Jersey and that it was largely performed there, with delivery to Pennsylvania being the only part of the contract performed elsewhere. 155 N.J.Super. at 649, 382 A.2d at 650. In *Resin Research Lab., Inc. v. Gemini Roller Corp.*, 105 N.J.Super. 401, 404, 252 A.2d 415, 416 (1969), it was held that a New Jersey court had jurisdiction over a New York defendant where the defendant had made contact with the plaintiff in New Jersey, and the plaintiff did its work there, "where it was reasonable to expect it would be done." The Superior Court noted that it did not matter that the contract might not have been executed in New Jersey, as long as it was contemplated that "substantial performance" would occur there. 105 N.J.Super. at 405, 252 A.2d at 417. *See also Avdel Corporation v. Mecure, supra* (New Jersey had jurisdiction where New York defendant ordered rivets from New Jersey plaintiff and could reasonably anticipate that they would be manufactured in New Jersey, and New York defendant made trips to New Jersey in connection with this contract); *J. W. Sparks v. Gallos*, 47 N.J. 295, 220 A.2d 673 (1966) (New York had jurisdiction over New Jersey defendant who ordered New York broker to purchase stock on New York exchange and knew entire transaction would take place in New York); *Unicon Investments v. Fisco, Inc.*, 137 N.J.Super. 395, 349 A.2d 117 (1975) (New Jersey had jurisdiction over guaranty contract between Pennsylvania defendant and New Jersey plaintiff where defendant undertook certain responsibilities in New Jersey if primary party failed to perform them); *Litton Industrial Sys. Inc. v. Kennedy Van Saun Corp.*, 117 N.J.Super. 52, 283 A.2d 551 (1971) (New Jersey had jurisdiction where Pennsylvania defendant must have contemplated part performance of contract would occur in New Jersey and Pennsylvania defendant had other

business contacts in New Jersey); *Corporate Development Specialists, Inc. v. Warren-Teed Pharmaceuticals, Inc.,* 102 N.J.Super. 143, 245 A.2d 517 (1968) (New Jersey had jurisdiction over Delaware defendant where plaintiff performed most of its work in New Jersey, and defendant had other business contacts in New Jersey).

Appellant relies heavily on *J. I. Kislak, Inc. v. Trumbull Shopping Park, Inc., supra,* where the New Jersey Superior Court refused to allow the trial court to exercise jurisdiction over a Delaware corporation with its principal place of business in Connecticut. The plaintiff was a rental agent and the defendant, a real estate developer. The plaintiff was suing for commissions on the basis of an agreement executed in Connecticut whereby the plaintiff was retained as the exclusive rental agent for stores in the defendant's Connecticut real estate development. In concluding that New Jersey did not have jurisdiction over the defendant, the Superior Court noted that the defendant solicited the plaintiff in Connecticut; that the subject matter of the agreement was there; that the parties agreed that that state's law would apply to their agreement; and that the defendant performed no activities in New Jersey. In addition, the Superior Court rejected the plaintiff's argument that the contract had "significant" effects in New Jersey because the plaintiff had made many contacts with prospective tenants by letters and telephone calls from its New Jersey office and had received many inquiries from such prospects at that office. The court stated that these "preliminary activities" of the plaintiff were not enough to justify New Jersey jurisdiction and that "[t]he truly significant effects of the contract were contemplated and in fact took place in New York and Connecticut, where the property was exhibited to prospective tenants and leases negotiated, prepared and executed, which in turn created plaintiff's right to a cause of action." 150 N.J.Super. at 101–102, 374 A.2d at 1249. Given all of the foregoing, the court thought it "fair to assume" that the parties anticipated that any contractual dispute would be litigated in Connecticut and not in New Jersey. 150 N.J.Super. at 102, 374 A.2d at 1249.

■  Applying the teachings of all the New Jersey cases, including *Kislak*, we believe New Jersey had jurisdiction over the case before us. Although this case has some similarity to *Kislak*, it is sufficiently distinguishable to warrant a different result. First, the parties here had no agreement as to what law would govern their contract. Second, even assuming that appellant, like the defendant in *Kislak*, performed no activities in New Jersey—and this is a proper view of the evidence given the stage of the proceedings [2]—the contract here contemplated, and indeed produced, more significant effects in New Jersey than the one in *Kislak*. Appellee's design work was performed in New Jersey. This work was central to the satisfactory outcome of the contract. Appellant's President recognized as much when he signed the contract. Given the foregoing, we think the case closer to *Elizabeth Iron Works v. Kevin Construction Co.* and *Resin Research Lab., Inc. v. Gemini Roller Corp.* than *Kislak*.

Affirmed.