

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-10-2002

# Genesis Bio Pharm v. Chiron Corp

Precedential or Non-Precedential:

Docket 0-2893

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Genesis Bio Pharm v. Chiron Corp" (2002). *2002 Decisions.* Paper 9.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/9

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos.  00-2893 & 00-2981
_____

GENESIS BIO-PHARMACEUTICALS, INC.,

Appellant in No. 00-2893

v.

CHIRON CORPORATION; BEHRINGWERKE A.G.; CHIRON
BEHRINGWERKE GMBH & CO.; BIOLOGICAL AND POPULAR CULTURE,
INC.; CHIRON BEHRING GMBH & CO.; HOECHST A.G.

_____

GENESIS BIO-PHARMACEUTICALS, INC.

v.

CHIRON CORPORATION; BEHRINGWERKE A.G.; CHIRON
BEHRINGWERKE GMBH & CO.; BIOLOGICAL AND POPULAR CULTURE,
INC.; CHIRON BEHRING GMBH & CO.; HOECHST A.G.

CHIRON CORPORATION; CHIRON BEHRING GMBH & CO.,
Appellants in No. 00-2981
_____

On Appeal from the United States District Court
for the District of New Jersey

District Court Judge:  The Honorable Katharine S. Hayden
(D.C. Civil No. 98-02445)
_____

Argued November 26, 2001

Before:  ROTH, FUENTES and WEIS, Circuit Judges.

(Filed: January 10, 2002)

W. Michael Garner, Esq. (Argued)
Cheryl A. Stanton, Esq.
Dady & Garner
80 South Eighth Street
4000 IDS Center
Minneapolis, MN 55402
Counsel for Appellant/Cross-Appellee,
Genesis Bio-Pharmaceuticals, Inc.

Robert C. Epstein, Esq. (Argued)
Jacqueline Greenberg, Esq.
Porzio, Bromberg & Newman
100 Southgate Parkway
Morristown, NJ 07962
Counsel for Appellees/Cross-Appellants,
Chiron Corporation and Chiron Behring GMBH & Co.

_____

MEMORANDUM OPINION
_____

FUENTES, Circuit Judge:

In this matter, plaintiff Genesis Bio-Pharmaceuticals, Inc. ("Genesis"), a New Jersey-based distributor of pharmaceutical products alleges that defendants Chiron Corporation ("Chiron"), a California company and Chiron Behring, a German company, breached an oral agreement for the distribution of a rabies vaccine in the United States. Genesis claims that the oral agreement was made between itself and Hoechst A.G ("Hoechst"), at a meeting in Frankfurt, Germany and that, at the time the agreement was made, Chiron, a joint venturer with Chiron Behring, had authorized Hoechst to act in its behalf.

Following a series of motions, the District Court, among other decisions: (1) dismissed the complaint against Hoechst for lack of personal jurisdiction, (2) denied Chiron Behring's motion to dismiss for lack of personal jurisdiction, and, (3) dismissed the complaint against Chiron and Chiron Behring, holding that the Parol Evidence Rule barred Genesis' claims. The parties cross-appeal. Discerning no error, we will affirm the rulings of the District Court.

I.

The relevant facts are as follows. Hoechst, a German health care company, is the manufacturer of RabAvert, a rabies vaccine. Sometime between 1989 and 1990, Genesis began to perform marketing consulting work for Hoechst, for the purpose of becoming the exclusive U.S. distributor of RabAvert.

In February, 1996, Hoechst entered into a joint venture agreement with Chiron. As part of this agreement, Hoechst transferred its entire vaccine business, including the right to produce and distribute RabAvert, to "Chiron Behring," the joint venture entity. Chiron Behring was incorporated and located in Germany. The joint venture agreement gave Chiron ultimate decision-making power with regard to all business decisions concerning the distribution of RabAvert. Shortly thereafter, Hoechst informed Genesis that Chiron was taking over the distribution of RabAvert in the U.S. At this time, Genesis began to demand compensation for its consulting services.

On April 30, 1996, Genesis' president Jerrold Grossman met with representatives from Chiron to discuss a potential distributor relationship. No agreement was reached at

this meeting.

On June 27, 1996, Grossman and Genesis' attorney met with Hoechst executives and attorneys in Frankfurt, Germany and reached a settlement agreement (the "Settlement Agreement"). The parties agreed that, among other things;

      a)  Hoechst would pay $380,000 to Genesis to release Hoechst from "any and all claims which Genesis has... relating in any way to any and all relationships between the Parties [to the Settlement Agreement], for all time in which the Parties have had a relationship."

      b)  Hoechst would use "reasonable and diligent efforts...to assist Genesis in 'negotiating and concluding' an agreement with Chiron and the Joint Venture [Chiron Behring] for the distribution by Genesis of ...RabAvert, in the U.S. on terms that are outlined in the annexed memoranda from Chiron to [Hoechst]...(with the understanding that Chiron has strategic leadership of the joint venture [Chiron Behring])," and that,

      c)  "[t]his Agreement contains the entire agreement of the parties with respect to the subject matter hereof, and all prior understandings, discussions and representations are hereby merged herein." (the "complete integration clause").

Genesis maintains that it was induced to enter into the Settlement Agreement by Hoechst's representation that it had authority to negotiate on behalf of Chiron. In its complaint, Genesis alleges that the Hoechst representatives began the meeting by projecting onto a screen, two memos that Chiron sent Hoechst, proposing to grant Genesis certain distribution rights to RabAvert and other vaccines.

The first memo, dated May 30, 1996, stated that Chiron "would be prepared to...sell Genesis all Chiron vaccines, including rabies vaccine, at a price equal to the 'best' distributor price...for a 5 year period," and "[w]ork with Genesis to 'bid' on contracts for rabies vaccines."

The second memo, dated June 21, 1996, stated that "Chiron has offered to sell Genesis...the complete line of Chiron vaccines at the best price offered to vaccine distributors in the U.S. In addition, we would work with Genesis on "bid requests"...with Genesis receiving a price...equal to the best price given to any other vaccine distributor...for that bid."

Soon after the Settlement Agreement meeting, Grossman traveled to California ostensibly, to close the deal, and to discuss a distributorship with Chiron. Grossman met only briefly with Chiron's president, who avoided all discussion of a distribution agreement. According to Grossman, Chiron refused to meet again with Grossman, refused to respond to Grossman's request for confirmation of an agreement with it, and claimed that Hoechst had "no authority to speak or negotiate on behalf of Chiron or represent Chiron in any way."

On March 9, 1998, Genesis filed suit in the Superior Court of New Jersey against Chiron, Hoechst, Chiron Behring, and Bio-Pop. Specifically, the suit sought to enforce the alleged Distribution Agreement, or alternatively to recover damages for, among other things, breach of contract, fraud, civil conspiracy and tortious interference. On May 22, 1998, Chiron removed the case to federal district court in New Jersey. Thereafter, Hoechst moved to dismiss the complaint for lack of personal jurisdiction, and for failure to state a claim, contending that the Parol Evidence Rule barred Genesis' claims. Chiron Behring moved to dismiss the complaint for lack of personal jurisdiction. Chiron and Chiron Behring also joined in Hoechst's motion to dismiss based on the Parol Evidence Rule and filed a separate motion to dismiss on the additional grounds of judicial estoppel and absence of an indispensable party.

The District Court first disposed of Genesis' claims against Hoechst by granting Hoechst's motion to dismiss for lack of personal jurisdiction, noting that "Hoechst is a German company, and the settlement agreement was negotiated and executed in Germany, and no allegation evidence demonstrated that Hoechst ever entered New Jersey or directed activities there."

After further briefing and oral argument, the District Court denied Chiron Behring's jurisdictional motion, determining that Chiron Behring's "focal role as the manufacturer of the vaccine" in question, and their close corporate relation with Chiron allowed the court to exercise personal jurisdiction over Chiron Behring. However, the court dismissed the complaint against both Chiron and the Chiron Behring, holding that

the Parol Evidence Rule excluded any evidence that Chiron and/or Chiron Behring had authorized Hoechst to negotiate an exclusive distribution agreement with Genesis on their behalf. The Court also denied Chiron and Chiron Behring's motion to dismiss on grounds of judicial estoppel, and on the absence of an indispensable party claim.

Genesis appeals the District Court's dismissal of its claims under the Parol Evidence Rule. Chiron and Chiron Behring appeal the District Court's denial of their motion to dismiss against Chiron Behring for lack of personal jurisdiction decision and the denial of their judicial estoppel and indispensable party motions.

## II.

### A.

We must first consider the District Court's denial of Chiron Behring's motion to dismiss based on lack of personal jurisdiction. We review a District Court's decisions regarding personal jurisdiction de novo. See, Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co. 75 F.3d 147, 150 (3d Cir. 1996) (holding that "whether personal jurisdiction may be exercised over an out-of-state defendant is a question of law, and this court's review is therefore plenary.").

New Jersey's long-arm statute, N. J. Court Rule 4:4-4, has been interpreted as extending jurisdiction over non-residents "to the uttermost limits permitted by the U.S. Constitution." Charles Gendler Co. v. Telecom Equity Co. 102 N.J. 460, 469 (1980). Under the Due Process Clause of the Fourteenth Amendment, personal jurisdiction depends upon "the relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner 433 U.S. 186, 204 (1977).

Here, we find that Chiron Behring is subject to New Jersey personal jurisdiction because of the nature of its corporate relationship with Chiron Corporation. New Jersey courts have determined that a parent corporation's contacts with the forum state may justify exercise of personal jurisdiction over its (wholly-owned) non-resident subsidiary. See, Moon Carrier v. Reliance Insurance, 379 A.2d 517 (N.J. Super. 1977). The relevant jurisdictional inquiry is "whether the [subsidiary] and the parent...so operate as single entity, or unified and cohesive economic unit, that when the parent is within venue of

court, the [subsidiary] is also within court's jurisdiction; [this] 'single entity' test requires that a parent over which the court has jurisdiction so control and dominate a subsidiary as in effect to disregard the latter's independent corporate existence." Moon Carrier v. Reliance Insurance, 379 A.2d 517 (N.J. Super. 1977). This court has also used the single entity test. See, e.g., Lucas v. Gulf & Western Industries, Inc., 666 F.2d 800 (Cir. 3, 1981).

Chiron is a multi-national health care company that does business within the State of New Jersey. On the basis of these extensive contacts with the state, Chiron has waived any claims it might have with regards to personal jurisdiction. As the attorney for both Chiron and Chiron Behring admitted at oral argument, Chiron Behring is a wholly-owned subsidiary of Chiron Corporation. There is ample evidence in the record that Chiron dominates Chiron Behring and that the two are acting as a single entity, at least in this matter. For instance, Chiron has ultimate decision making power with regard to all business decisions concerning Chiron Behring (including the distribution of RabAvert). Additionally, both share the same legal counsel in this litigation. Therefore, because of the nature of the relationship between the parent corporation, Chiron, and its wholly-owned subsidiary, Chiron Behring, attributional jurisdiction attaches, and the New Jersey District Court acted properly in exercising personal jurisdiction over Chiron Behring. See, Lucas v. Gulf & Western Industries, Inc., 666 F.2d 800 (Cir. 3, 1981) (indicating factors that may have a bearing on attributing the jurisdiction of a subsidiary to a parent corporation); Kuehne & Nagel v. Geosource, Inc., 874 F.2d 283 (5th Cir. 1989) (same).

B.

We next consider the District Court's determination that Genesis failed to state a claim upon which relief could be granted under FRCP 12(b)(6). The district judge granted the defendant's motion to dismiss, finding that the parol evidence rule barred Genesis' evidence of a completed distribution agreement. For the reasons stated below, we agree with the district judge and will affirm her ruling.

Genesis alleges that there were two aspects to their Settlement Agreement with

Hoechst. The first, clearly documented in the Agreement, was Hoechst's $380,000 payment to Genesis for its past efforts. The second was an alleged distribution agreement with Chiron and Chiron Behring. Genesis claims that Chiron and Chiron Behring had [verbally] authorized Hoechst to negotiate at the Frankfurt meeting on their behalf, and that they left that meeting with the essential terms of a distribution agreement hammered out. We agree with the district judge that the parol evidence rule prohibits our consideration of this evidence . See, Genesis Bio-Pharmaceuticals v. Chiron Corp. D.C. Civil No. 98-2445 (D.N.J. 2000) (determining that if such evidence were allowed into the record, it would allow for the contradiction of the written settlement agreement by "the story of the negotiation" of [the] written contract "as told by the litigant" (quoting Advanced Medical, Inc. v. Arden Medical Sys., Inc., 955 F.2d 188, 195 (3d Cir. 1992))).

The parol evidence rule provides that any previous oral representations or agreements, offered to "vary, modify, or supersede the written contract, [are] inadmissible in evidence." Fr. Winkler KG v. Stoller, 839 F.2d 1002 (3d Cir. 1988); See also, Compton Press, Inc. Employees' Profit Sharing Retirement Plan v. Granada Investments, Inc., 1992 WL 566329 (D.N.J.,1992). (instructing that "the parole evidence rule bars, as a matter of substantive contract law, any attempt to offer oral evidence to vary the terms of a fully integrated written contract").

The Settlement Agreement in this matter is clearly fully integrated. See, Appellant's Appendix, at A52 (stating that "this Agreement contains the entire agreement of the parties with respect to the subject matter hereof, an all prior understanding, discussions and representations are hereby merged within."). Furthermore, the plain language of the Settlement Agreement requires that Hoechst use "reasonable and diligent efforts...to assist Genesis in negotiating and concluding an agreement with [Chiron and Chiron Behring] for the distribution by Genesis of Chiron vaccine products." Later in the same paragraph there is a disclaimer that Hoechst's promise to assist Genesis is made "with the understanding that Chiron has strategic leadership of the joint venture."

If Hoechst had truly been "authorized" to negotiate a distribution agreement on behalf of the others, as Genesis contends, then the language in the Settlement Agreement modifying Hoechst's promise "with the understanding that Chiron has strategic leadership of the joint venture" becomes meaningless. Furthermore, if the result of the Frankfurt meeting was "a distribution agreement going forward" between Genesis, Chiron and Chiron Behring, then the language in the Settlement Agreement that Hoechst would subsequently further "assist" Genesis in "negotiating (and concluding)" a distribution agreement with those same parties is superfluous.

The only written evidence that Genesis offers in support of its allegation that it had negotiated a binding distribution agreement with Chiron are the two memos from Chiron to Hoechst. However, these documents make no specific mention of any authorization by Chiron and Chiron Behring for Hoechst to conclude a multi-million dollar distribution agreement in their absence. Even when viewing these memos in the light most favorable to Genesis, they require us to draw inferences that are contradicted by the plain language of the Settlement Agreement. We have previously determined that this court is not obliged to accept as true, even at this preliminary stage, such "unsupported conclusions and unwarranted inferences." See, City of Pittsburgh, 147 F.3d at 263 (3d Cir. 1998). Accordingly, we affirm the ruling of the District Court dismissing this matter for failure to state a claim upon which relief can be granted. In light of this determination, we need not reach Chiron and Chiron Behring's motions to dismiss the complaint based on the judicial estoppel doctrine or the absence of an indispensable party.

## III.

For the reasons set forth above, we affirm the ruling of the District Court denying Chiron Behring's motion to dismiss based on lack of personal jurisdiction. However, we grant Chiron and Chiron Behring's motion to dismiss based on the Parol Evidence Rule.

_____
TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.


                                   /s/ Julio M. Fuentes

Circuit Judge