**ALFRED HOFMANN & CO., Plaintiff,**

v.

**KARL MAYER ERSTE HESSISCHE WIRKMASCHINENFABRIK GMBH, a company, represented by its Managing Director, Karl Mayer, Defendant.**

Civ. A. No. 454-57.

United States District Court
D. New Jersey.

Feb. 21, 1958.

Cole, Morrill & Berman, Paterson, N. J., for plaintiff.

Curt C. Silberman, East Orange, N. J., Samuel A. Larner, Newark, N. J., of counsel, for defendant.

HARTSHORNE, District Judge.

Defendant company, located and organized in the Western Zone of Germany, moves to dismiss the complaint and quash the service thereon. This service was made in New Jersey, before the case was removed to this court, on Karl Mayer, a former individual defendant, who at the time of the service was the German company's managing director, while he was attending a convention at Atlantic City, New Jersey. The motion is based upon the German company's contention that it is not doing business in New Jersey, so that the above service is invalid as depriving it of property without due process of law, there being no contention that the service did not comply with the purely statutory requirements.

More specifically, defendant claims in this regard, on the basis of affidavits and depositions, that at the time of service Karl Mayer was the president and treasurer of the Mayer Textile Machine Corporation, a New Jersey corporation, organized in March, 1956. Defendant claims that this New Jersey corporation was in nowise an agent of the German company, but a completely independent and separate sales and repair company, which bought its product outright from the German company, and then sold it directly to American customers. Of course, if this is in fact so, and if this New Jersey corporation was not created in fraud of plaintiff corporation, then under Cannon Manufacturing Company v. Cudahy Packing Company, 1925, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634, it might well be that the German company was not "doing business in New Jersey" at the time of the above service, at least within the meaning of that term as laid down in the earlier decisions of the United States Supreme Court. However, less than two months ago, our highest court said, in a case involving this very question:

"In a continuing process of evolution this Court accepted and then abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over such [foreign] corporations." (Brackets this Court's.) McGee v. International Life Insurance Company, 1957, 355

U.S. 220, at page 222, 78 S.Ct. 199, 200, 2 L.Ed.2d 223.

*McGee* then quoted the following from International Shoe Company v. Washington, 1945, 326 U.S. 310, at page 316, 66 S.Ct. 154, 90 L.Ed. 95:

> "[D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain *minimum contacts* with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (Emphasis added.)

After quoting from *International Shoe,* the opinion in *McGee* added, " * * * It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State" of California, where the service was had by mailing to the Texas defendant.

In any event, and quite regardless of the broadening of "the standard for measuring the extent of state judicial power over" foreign corporations, it is clear that, if the New Jersey corporation was in fact the mere agent of the German corporation, the German corporation was then "doing business" in New Jersey, in the same way as if the German corporation had used an individual agent to act for it in New Jersey. *Cannon* and the cases there cited are not to the contrary. In *Cannon* the court expressly found that the local corporation, while "employed to market Cudahy products within the state * * * does not do so as defendant's agent," even bearing in mind the fact that the local corporation was a subsidiary of the foreign corporation. The holding in *Cannon* was based upon the fact that "the corporate separation, though perhaps merely formal, was real. It was not pure fiction." ibid. 267 U.S. 337, 45 S.Ct. 251.

However, plaintiff claims this is exactly what distinguishes *Cannon* from the case at bar. Plaintiff claims that the corporate separation of the New Jersey corporation from the German corporation is "pure fiction" and "merely formal", calling attention to the following facts, among others, appearing in the affidavits and depositions:

Karl Mayer, with his wife, literally owned the German corporation, Mayer being its managing director. In 1951 plaintiff claims that the German corporation agreed to make plaintiff its exclusive sales representative in this country for the German corporation's products. In November, 1955, the German corporation wrote plaintiff: "Our Mr. Mayer will therefore himself undertake the organization for the sale and customer service * * *" thus evincing the German corporation's intent not to abide by its above alleged contract with plaintiff. Shortly thereafter the New Jersey corporation was created and has been selling the German corporation's products ever since, with Karl Mayer, the owner and managing director of the German corporation, as the president and treasurer of the New Jersey corporation, and owning, with his wife, 80% of the stock of the New Jersey corporation. Almost immediately after the founding of the New Jersey corporation, the German corporation repeatedly advertised in German trade journals that the New Jersey corporation was the German corporation's "Niederlassung in U. S. A." The literal translation of this means its "letting down in U. S. A.", or, according to an affidavit, the German corporation's "place of business" in U. S. A., though this translation is subject to some dispute. In addition to this representation to the trade by the defendant German corporation itself of its relation to the New Jersey corporation, it should be added that the two companies use substantially the same trademark, or insignia, and in the depositions of Karl Mayer, obviously the moving spirit of both companies, he admitted that, before the formation of the New Jersey corporation, the German corporation had decided that "steps had to be taken to increase these [its] sales." The same deponent also admitted that as between the two companies "Everything is based on mutual trust * * *.

In both companies there is the same spirit."

The above evidences real question in fact as to whether "the corporate separation" between the German corporation and the New Jersey corporation "was real" and "was not pure fiction." If it was pure fiction, then, of course, not only might the corporate veil be pierced because of the possible fraud, but, regardless of fraud, the New Jersey corporation would be in fact the agent of the German corporation. Then, by the same token, *Cannon* and the authorities cited by it, would be inapplicable. Thus, even under the old rule, the German corporation would have been doing business in New Jersey, and the service on Karl Mayer, the president and treasurer of such agent, and the managing director and owner of the German corporation, representing one or the other, or both, at the Atlantic City convention, would be valid.

Of course, this is quite apart from the question under the recent and more liberal principle laid down in *McGee,* as to whether the suit here is "based on a contract which had substantial connection with" New Jersey, so as to create "minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *McGee,* supra; *International Shoe,* supra. See also Pugh v. Oklahoma Farm Ins. Co., D.C.La.1958, 159 F.Supp. 155.

Obviously, therefore, there is *prima facie* evidence that the service on the German corporation in this case is valid, so that defendant's motion must be denied. On the other hand, of course, when dealing with the complicated factual question of whether a corporation is merely the agent of another, or a completely independent entity, the facts must be fully developed to insure justice. As this can only be done at the trial, defendant cannot be fairly foreclosed from raising this issue again at that time.

Defendant's above motion is presently denied.