137 N.J. Super. 395 (1975)
349 A.2d 117
UNICON INVESTMENTS, A PARTNERSHIP FORMED UNDER THE PROVISION OF THE UNIFORM PARTNERSHIP LAW OF NEW JERSEY, PLAINTIFF,
v.
FISCO, INC., A CORPORATION OF PENNSYLVANIA, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided November 5, 1975.
*397 Mr. Richard C. Sherman argued the motion for plaintiff (Mr. Max Sherman, attorney).
Mr. Mark Rosenthal argued the motion for defendant (Mr. Rosenthal, on the brief, Mr. Frederic K. Becker, of counsel; Messrs. Wilentz, Goldman & Spitzer, attorneys).
DREIER, J.D.C., Temporarily Assigned.
Defendant Fisco, Inc. has moved to dismiss the complaint for lack of personal jurisdiction. Defendant is a Pennsylvania corporation, and out-of-state service upon it has been effected pursuant to R. 4:4-4(c)(1). Defendant's contention calls upon this court to clarify what constitutes "minimal contacts" with the State of New Jersey to support such service "consistent with due process of law."
Plaintiff and defendant agree that defendant guaranteed a lease between plaintiff as landlord and defendant's wholly owned subsidiary, Acme Assurance Agency, Inc. a Pennsylvania corporation, covering a portion of a building located in Bloomfield, New Jersey. The guaranty was executed in Pennsylvania and mailed to New Jersey, and is a general guaranty of all of the tenant's obligations under the lease. Plaintiff further alleges that the guaranty was a condition of plaintiff's entering into the lease with Acme, and that defendant's undertaking to pay the rent, effect repairs, etc., in New Jersey provided sufficient contact with New Jersey to justify the exercise of personal jurisdiction.
As was noted in Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971), New Jersey permits "out-of-state service to the uttermost limits permitted by the United States Constitution," as such limits have been defined in International *398 Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The standard to be applied (as also noted in Avdel Corp.) was enunciated in International Shoe as follows:
* * * Due process requires only that in order to subject a defendant to judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." [326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 101-102]
Other states have also been presented with the question of whether the mere guaranty of a lease is sufficient to support out-of-state service of a complaint, and each appears to have rejected such a limited action as a basis for liability. A leading case is Ferrante Equipment Co. v. Lasker-Goldman Corp., 31 A.D.2d 355, 297 N.Y.S.2d 985 (App. Div. 1969), aff'd 26 N.Y.2d 280, 309 N.Y.S.2d 913, 258 N.E.2d 202 (Ct. App. 1970). This case involved the guaranty of a subcontractor's performance in New York by a guarantor who was a New Jersey resident, in consideration of which a performance bond was to be issued by another New Jersey concern. This case was followed in Bird v. Computer Technology, Inc., 364 F. Supp. 1336 (S.D.N.Y. 1973), and was closely paralleled by Weinstein v. Talevi, 4 Conn. Cir. 330, 231 A.2d 660 (Cir. Ct. 1966), also applying New York law. These cases all interpret the New York long-arm statute, CPLR § 302(a)(1), which, as a condition precedent to imposition of in personam jurisdiction, requires a finding that the nonresident defendant was present in New York in person or through an agent to transact any business within the state. (See Platt Corp. v. Platt, 17 N.Y.2d 234, 270 N.Y.S.2d 408, 217 N.E.2d 134 (Ct. App. 1966), and other cases cited in J.W. Sparks & Co. v. Gallos, 47 N.J. 295, 304-305 (1966).) *399 New York has not, however, extended its jurisdiction to the utmost constitutional limits, as has the State of New Jersey.
Other states have also considered this issue. In All-Lease Co. v. Betts, 294 Minn. 473, 199 N.W.2d 821 (Sup. Ct. 1972), plaintiff was a Minnesota corporation which rented a truck to a Florida resident, the lease having been guaranteed by a Pennsylvania resident. There the statute (Minn. St. § 543.19) provided, in part:
Subdivision 1. As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction over the subject matter may exercise personal jurisdiction over * * * any non-resident * * * in the same manner as if * * * he were a resident of this state. This section applies if * * * the * * * non-resident individual:

* * * * * * * * *
b) transacts any business within the state * * *.
Subdivision 3. Only causes of action arising from acts enumerated in subdivision 1 may be asserted against a plaintiff in an action in which jurisdiction over him is based upon this section.
The court there noted that plaintiff had the additional obligation to show that the contacts with the forum jurisdiction were such that the exercise of jurisdiction would be consistent with due process, 199 N.W.2d at 822. The discussion of the court, although phrased in due process terms, was very much a forum non conveniens analysis, and the unfairness of requiring the Pennsylvania resident to defend in Minnesota was apparent.[1]
Two other cases, Misco Leasing, Inc. v. Vaughn, 450 F.2d 257 (10 Cir.1971) and Liberty Leasing Co., Inc. v. Milky Way Stores, Inc., 352 F. Supp. 1210 (N.D. Ill. 1973), have similar fact patterns. Both cases involved equipment leases where out-of-state defendants executed guarantees *400 of the leases which by their terms were to be performed and payments made in the forum state. The Kansas statute, K.S.A., § 60-308(b), provided in material part:
Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits said person, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:
(1) The transaction of any business within this state;

* * * * * * * * *
(4) Contracting to insure any person, property or risk located within this state at the time of contracting; * * *.
The Illinois statute (Ill. Rev. Stat., C. 110, §§ 16 and 17) is identical in its operation. In both cases the statutes, similar to the New York long-arm statute quoted earlier, required that defendant must purposefully do some act in the forum state. It was insufficient in all of these cases that only the effects of the out-of-state act be felt in the forum state.
J.W. Sparks & Co. v. Gallos, supra, provides a key to New Jersey's view of an out-of-state guaranty. In that case the New Jersey customer of a New Jersey branch office of a New York broker contracted by telephone for the purchase of certain stock which was to be purchased on the New York over-the-counter market. The purchaser defaulted on payment and was sued in the Civil Court of the City of New York, under the long-arm provision of the Civil Court Act (providing jurisdiction where a nonresident in person or through an agent transacts any business within the City of New York). Default judgment was obtained, and was the basis for New Jersey action. A defense of lack of personal jurisdiction in the New York suit was accepted by the trial court, but rejected on appeal.
Defendant seeks to distinguish J.W. Sparks & Co. v. Gallos by (a) the special nature of the securities transaction and (b) the lack of an agency relationship in this case, versus the acknowledged agency relationship in the earlier *401 action. Both of these points were considered by the Supreme Court of New Jersey in Avdel Corp. v. Mecure, supra, where J.W. Sparks & Co. v. Gallos was interpreted as follows:
* * * We held that New York could constitutionally obtain in personam jurisdiction over the defendant and that its judgment was entitled to Full Faith and Credit. We reasoned that defendant was aware that the plaintiff, acting as his agent, would engage in a transaction of purchase and sale in New York and that he therefore purposely availed himself of the privilege of conducting activities in that state. Thus, we held that a New Jersey resident was amenable to suit in New York, for breach of an agreement which he knew or should have known would have substantial effects in New York. It is true that we mentioned New York's interest in regulation of the securities industry, but that factor was not controlling. [58 N.J. at 270-271, footnote omitted emphasis supplied]
We see that the agency point had been mentioned in J.W. Sparks & Co. v. Gallos, not only to show that the agent had been present within the forum jurisdiction (to satisfy the New York statute) but also to show that defendant knew or should have known that his acts would have a substantial effect in the forum state. Also, it was specifically noted that the security aspect of the transaction was not a controlling factor in the J.W. Sparks & Co. v. Gallos determination.
Plaintiff further asserts that since Acme actively engaged in business in New Jersey, defendant as the corporate parent is thus generally subject to suit here. Cf. Van Eeuwen v. Heidelberg Eastern, Inc., 124 N.J. Super. 251, 256-258 (App. Div. 1973); Hoagland v. Springer, 75 N.J. Super. 560, 564 (App. Div. 1962), aff'd o.b. 39 N.J. 32 (1962); Taca International Airlines, Inc. v. Rolls-Royce Ltd., 84 N.J. Super. 140, 146-150 (Law Div. 1964), and see Restatement, Conflict of Laws 2d, § 52, comment (b), which reads as follows:
b. Subsidiary of corporation. Judicial jurisdiction over a subsidiary corporation does not of itself give a state judicial jurisdiction over the parent corporation. This is true even though the parent owns all of the subsidiary's stock. So a state does not have *402 judicial jurisdiction over a parent corporation merely because a subsidiary of the parent does business within its territory.
If the subsidiary corporation does an act, or causes effects, in the state at the direction of the parent corporation or in the course of the parent corporation's business, the state has judicial jurisdiction over the parent to the same extent that it would have had such jurisdiction if the parent had itself done the act or caused the effects.
Judicial jurisdiction over a subsidiary corporation will likewise give the state judicial jurisdiction over the parent corporation if the parent so controls and dominates the subsidiary as in effect to disregard the latter's independent corporate existence. * * *
Plaintiff has attached to its affidavit promotional literature contained in defendant's annual report extolling the potential of Acme's New Jersey activities in producing profits for defendant.[2] Such statements and activities, however, do not rise to the level needed to cause the corporate parent to be subject to process solely by reason of the subsidiary's acts under the standards set forth above. But cf., Alfred Hoffmann & Co. v. Karl Mayer Erste H., 159 F. Supp. 77 (D.N.J. 1958).
From the above analysis, a rule emerges as to the limits of due process with respect to the question of the "transaction of business" in a state, and this question must be approached differently in New Jersey from its sister states where the full powers afforded by the Due Process Clause have not been exercised. We do not require the physical purposeful doing of some act within New Jersey, nor do we require the transaction of business within our State in person or through an agent. Cf. Corporate Development Specialists, Inc. v. Warren-Teed Pharm., Inc., 102 N.J. Super. 143, 148-153 (App. Div. 1968), certif. den. 52 N.J. 535 *403 (1968), where Judge Conford summarized the authorities bearing upon the general question of "doing business" in a state. There the court concluded that a New Jersey business broker could obtain out-of-state service upon a defendant based upon breach of a contract which was made out-of-state, but was substantially to be performed in New Jersey.
Insofar as the out-of-state cases are distinguishable based upon the particular statutes there being interpreted and the particular fact patterns presented, this court has attempted so to distinguish them. Insofar as these out-of-state cases may not be distinguishable, they are merely persuasive authority to be accorded respectful attention, but they are not binding upon this court. In New Jersey there are special problems in commercial transactions since this State is situated in a commercial corridor between highly developed areas of New York and Pennsylvania, both of which contain the principal offices of many large corporations maintaining subsidiaries within our State. The business of New Jersey requires that our many merchants, suppliers and contractors deal on a guaranteed basis with often thinly capitalized subsidiaries of large-out-of-state corporations. On a policy basis also, this court finds that such jurisdiction as may be based upon out-of-state guarantees of New Jersey leases, or like transactions, should be upheld, where traditional notions of fair play and substantial justice are not offended.
It is sufficient under Avdel Corp. v. Mecure, supra, that an out-of-state defendant enter into an agreement which he knew or should have known would have substantial effects in New Jersey. 58 N.J. at 271. In our case, the guaranty executed in Pennsylvania was a precondition to plaintiff leasing the property to Acme. Without it Acme could not have gone into possession, nor would the property have been withdrawn from the New Jersey leasing market. Further, under the guaranty defendant agreed to pay rent in New Jersey, effect repairs on New Jersey real estate, etc. These are substantial enough contacts to provide the basis of jurisdiction. Since plaintiff's claim arises out of the transaction, and the *404 proximity of the states in question present no special inconvenience to the defendant (see Avdel Corp. v. Mecure, supra, 58 N.J. at 273), this court must deny defendant's motion.
NOTES
[1] This court questions whether the decision would have been the same had the original truck lease been executed in the forum state, as in this case, or if there had been the additional understanding that the agreement was to have been performed in that state rather than Florida.
[2] "* * * During the third and fourth quarters of 1972, we expensed training costs and the burden of duplicate staffs while preparing the new facility in New Jersey for opening last November. Now we are enjoying the fruits. The New Jersey agency is already operating smoothly and profitably, which would not be possible if we had not developed our personnel first. We will continue to develop organization and competence in anticipation of premium growth."