**Bernard E. KOFF, et al., Plaintiffs,**

v.

**BRIGHTON PHARMACEUTICAL, INC. and Kansas City Southern Industries, Inc., Defendants.**

Civ. A. No. 88–1982.

United States District Court, D. New Jersey.

Oct. 24, 1988.

As Amended Dec. 29, 1988.

John M. Newman, Porzio, Bromberg & Newman, Morristown, N.J., for plaintiffs.

Linda G. Harvey, Greenberg, Dauber & Epstein, Newark, N.J., for defendants.

## OPINION

WOLIN, District Judge.

The substance of this case is the alleged breach of a Stock Purchase Agreement between plaintiffs and defendants. The current issue before the Court, however, is whether there are sufficient "minimum contacts" between the defendants and the State of New Jersey to support the assertion of in personam jurisdiction over defendants by a New Jersey court. A secondary issue is whether the Court should transfer this action to the Western District of Missouri pursuant to 28 U.S.C. § 1404(a).

The Court concludes that there are sufficient contacts; thus defendants' motion to dismiss for lack of personal jurisdiction will be denied. The Court further concludes that defendants have not met their burden in overcoming the presumption that plaintiffs' choice of forum should be honored; therefore, defendants' alternative motion to transfer will also be denied.

## INTRODUCTION

Plaintiffs, all New Jersey residents, are individual stockholders of USI Technology, Inc. (USI), a New Jersey corporation. Defendants Brighton Pharmaceutical, Inc. (Brighton) and Kansas City Southern Industries, Inc. (KCSI) are both Delaware corporations with their principal place of business in Missouri. Subject matter jurisdiction is thus founded on diversity of citizenship.[1]

The immediate basis for the lawsuit is the Stock Purchase Agreement between plaintiffs and defendant Brighton, with de-

---

1. 28 U.S.C. § 1332(a).

fendant KCSI the guarantor of Brighton's obligations. Defendants rely on the fact that this Agreement was negotiated and executed in Missouri, as well as their contention that defendants have had no other contacts with New Jersey, to support their claim that defendants do not have the minimum contacts necessary to sustain jurisdiction. Plaintiffs, on the other hand, note that preliminary negotiations were conducted via correspondence and telephone conversations to and from New Jersey. In addition, the Agreement concerns the purchase of a New Jersey corporation from New Jersey residents and contains a choice-of-law provision choosing New Jersey law in part. Moreover, the parties have a prior relationship, dating back at least to March of 1983, through which defendants had contacts with New Jersey and out of which the Stock Purchase Agreement arose.

On June 23, 1983, USI and a company named Martec Pharmaceuticals, Inc. (later renamed Midwest Pharmaceutical, Inc.) (MPI), entered into a joint venture for the purpose of manufacturing and distributing the generic drug propranolol hydrochloride. MPI is a wholly owned subsidiary of L.M. Johnson Co., which is a wholly owned subsidiary of defendant Brighton. Defendant KCSI, in turn, owns a majority interest in Brighton.

As averred by plaintiffs, the joint venture maintained a base of operations in New Jersey. According to plaintiffs, KCSI, Brighton and their officers and directors played a significant role in managing the joint venture. Specifically, plaintiffs allege that William G. Skelly, KCSI's manager of corporate development (and the vice-president and later president of the joint venture), conducted various aspects of the joint venture's business by letters written on KCSI letterhead. *See* Affidavit of Richard C. Zeich, at 2–4. In addition, plaintiffs allege that Skelly and Landon Rowland, KCSI's president, came to New Jersey on several occasions in 1984 and 1985 to discuss various business matters pertain-

ing to the joint venture. *See id.* at 4–5. Furthermore, plaintiffs allege that KCSI was named as the insured for the joint venture's automobile; provided employment benefits for Zeich, who was not an employee of KCSI but rather an employee of the joint venture; agreed to provide insurance for the propranolol venture when additional insurance became necessary; and allowed an MPI employee to use KCSI's Federal Express account. *See id.* at 6–7. In sum, Mr. Zeich alleges:

> During all of the time that I had dealings with Martec Pharmaceuticals, Inc., USI's partner in the joint venture, I was under the distinct impression that, no matter with whom I spoke, whether to Gene Goode, William Skelly or Landon Rowland, that person spoke as an officer of KCSI. It appeared to me that Martec and KCSI were one and the same. It was also my understanding that Brighton and KCSI were one and the same.

*Id.* at 9.

In light of the joint venture's activities in New Jersey, Skelly and USI's accountant apparently agreed to acknowledge to New Jersey that the joint venture was doing business in that state; this is evidenced by a letter addressed to Skelly in his capacity as a KCSI employee.[2] Defendant Brighton actually had a certificate of authority to conduct business in New Jersey from August 1, 1984 to December 31, 1985.[3]

Because of internal disagreements and personality conflicts, the two principals to the joint venture began to look for a way to dissolve their relationship in the summer and early fall of 1985. The result was the Stock Purchase Agreement, which is the subject of the instant action. Under the Agreement, Brighton agreed to acquire a 100% interest in USI by purchasing the USI shares from the USI shareholders, plaintiffs in this action. Allegedly because of plaintiffs' demands, KCSI served as the guarantor of Brighton's obligations under the Agreement.

---

**2.** *See* Affidavit of Steven Sherrill, at 3; Letter from Sherrill to Skelly, Oct. 22, 1984, at 3.

**3.** *See* Plaintiffs' Opposition Memorandum, Exh. F.

Section 12.08 of the Agreement contains the following choice-of-law provision:

The validity of this Agreement, the terms hereof, and all duties, obligations and rights arising therefrom, shall be governed by and interpreted in accordance with the laws and decisions of the State of Missouri as applicable to contracts made and to be performed in this State; provided, however, stock transfer taxes ... shall be governed by the laws of the State of New Jersey and title transfer shall be deemed to have occurred in New Jersey.

## DISCUSSION

### I. *The Motions to Dismiss*

■ A federal district court sitting in diversity jurisdiction may assert personal jurisdiction over a nonresident defendant to the extent permitted by the long-arm statute of the forum state. *See* Fed.R.Civ.P. 4(e). The applicable long-arm statute, N.J. Civ. Prac. R. 4:4–4, permits personal jurisdiction over a nonresident defendant to the extent allowed by the Due Process Clause of the Fourteenth Amendment. *Avdel Corp. v. Mecure*, 58 N.J. 264, 268, 277 A.2d 207, 209 (1971); *see DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir.), *cert. denied*, 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981); *Alchemie International, Inc. v. Metal World, Inc.*, 523 F.Supp. 1039, 1042 (D.N.J.1981). Thus this Court's inquiry is limited to whether personal jurisdiction over defendants KCSI and Brighton comports with the Due Process Clause itself. *Carty v. Beech Aircraft Corp.*, 679 F.2d 1051, 1058 (3d Cir. 1982); *DeJames*, 654 F.2d at 284.

In light of the "traditional notions of fair play and substantial justice" inherent in the Due Process Clause, a state may exercise personal jurisdiction over a nonresident defendant only if there are sufficient "contacts" between defendant and the forum state. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In order for an individual's contacts with a forum state to constitute the requisite "minimum contacts," the connection with the forum state must be sufficient so that the individual " 'should reasonably anticipate being haled into court there.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980)). Implicit in the requirement of minimum contacts is the necessity that there be some act or acts by virtue of which defendant has purposely availed himself of the benefits and protections of the laws of the forum state. *Burger King*, 471 U.S. at 474–76, 105 S.Ct. at 2174–75.

*Burger King* delineates a two-part analysis to resolve the Due Process issues. First, the Court must determine whether minimum contacts exist. Next, the Court must consider several "other factors" to determine whether the assertion of jurisdiction would comport with the concepts of fairness and justice inherent in the Due Process Clause. 471 U.S. at 476–77, 105 S.Ct. at 2184.

■ A person or entity having a continuous and systematic relationship with a state may be subject to "general jurisdiction" there—that is, he may be amenable to service of process for any and all claims against him. On the other hand, as long as a cause of action arises out of a defendant's contacts with the forum state, defendant may be subject to "specific jurisdiction" there even in the absence of general and sustained contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 & nn. 8–9, 104 S.Ct. 1868, 1872 & nn. 8–9, 80 L.Ed.2d 404 (1984).

### (A) Minimum Contacts

The facts in the instant case indicate that both defendants' contacts with New Jersey were sufficient to sustain in personam jurisdiction over them without violating the Due Process Clause. Since plaintiffs' cause of action arises out of or is related to these contacts, the Court has specific jurisdiction over defendants. There is thus no need to determine whether the contacts are sufficient to sustain general jurisdiction.

### 1. *Defendant KCSI*

The Stock Purchase Agreement involved the purchase of a New Jersey corporation from New Jersey residents. Although the final negotiating sessions were held in Missouri and the Agreement was executed there, plaintiffs allege that preliminary negotiations were conducted through correspondence and telephone conversations to and from New Jersey. Moreover, despite the general provision favoring Missouri law, the Agreement provides that title transfer is deemed to have occurred in New Jersey.

Plaintiffs argue that these contacts alone are sufficient to sustain jurisdiction, and cite *Alchemie International, Inc. v. Metal World, Inc.*, 523 F.Supp. 1039, 1042 (D.N.J. 1981). *Alchemie* held that defendant's solicitation of a contract with a New Jersey resident, combined with defendant's mail and telephone contacts with plaintiff in New Jersey and a New Jersey choice-of-law provision, were sufficient contacts to sustain jurisdiction. 523 F.Supp. at 1049–51. Although telephone and mail communications alone may not give rise to jurisdiction, such contacts are relevant when they "form an integral part of an ongoing business relationship." *Electro–Catheter Corp. v. Surgical Specialties Instrument Co.*, 587 F.Supp. 1446, 1455 (D.N.J.1984). The contacts in the instant case go beyond even those in *Alchemie*.

Defendant KCSI has had a series of contacts with New Jersey in relation to the events preceding the execution of the Stock Purchase Agreement. In its brief in support of this motion, KCSI places undue emphasis on the negotiation and execution of the Stock Purchase Agreement itself, while ignoring the events preceding the Agreement's negotiation and execution. KCSI thus invites the Court to look at only one segment of the chronology and to ignore the *raison d'etre* of the Agreement. This offer the Court declines to accept. Indeed, the Supreme Court in *Burger King* adopted a "highly realistic" approach to personal jurisdiction issues in contracts cases. Under this approach, the existence of minimum contacts must be determined by considering "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." 471 U.S. at 479, 105 S.Ct. at 2185.

The full picture shows that the Stock Purchase Agreement arose out of the prior relationship between USI and MPI, a relationship by virtue of which KCSI had several ongoing contacts with the State of New Jersey, at least as averred by plaintiffs.[4] According to plaintiffs, KCSI was named as the insured for the joint venture's automobile; provided employment benefits for at least one joint venture employee; agreed to provide necessary insurance for the joint venture; and allowed an MPI employee to use KCSI's Federal Express account. Moreover, William G. Skelly, an employee of both KCSI and the joint venture, conducted various aspects of the joint venture's business on KCSI letterhead. It is true that a foreign corporation is not automatically subject to the jurisdiction of the forum state because of a subsidiary's activities within the state. *Lucas v. Gulf & Western Industries*, 666 F.2d 800, 805–06 (3d Cir.1981). However, in determining whether jurisdiction is proper, the court may consider other factors, namely "whether the subsidiary corporation played any part in the transactions at issue, whether the subsidiary was merely the alter ego or agent of the parent, and whether the independence of the separate corporate entities was disregarded." *Id.* at 806. Based on the allegations contained in the Zeich and Sherrill affidavits, and accepting those allegations at face value, the Court concludes that plaintiffs have made out a prima facie case that KCSI and MPI were effectively the same entity for purposes of the joint venture. Since MPI, as a participant in the joint venture, was conducting business in New Jersey, the Court con-

---

**4.** On a motion to dismiss, the Court must accept all of plaintiffs' allegations as true and must read those allegations in the light most favorable to plaintiffs. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Scott v. Plante*, 532 F.2d 939, 945 (3d Cir.1976).

cludes that MPI's contacts with New Jersey are chargeable to KCSI, at least in part.[5]

In addition, plaintiffs allege that Skelly and Landon Rowland, KCSI's president, came to New Jersey on several occasions in 1984 and 1985 to conduct the business of the joint venture. Visits to the forum state for the purpose of negotiating a contract have been recognized as substantial contacts with the forum state. *E.g., Western Union Telegraph Co. v. T.S.I., Ltd.*, 545 F.Supp. 329, 335 (D.N.J.1982). It is true that these alleged visits were not for the purpose of negotiating the Stock Purchase Agreement. Again, however, they were related to the entire course of dealing between the parties, a relationship that culminated in the Stock Purchase Agreement. To ignore these visits would therefore be tantamount to tunnel vision on the part of the Court.

In light of all of the above contacts with New Jersey, the Court holds that it would not be unconstitutional to assert personal jurisdiction over KCSI.

█ In arguing against jurisdiction, KCSI focuses on its status as a guarantor of the Stock Purchase Agreement and relies on *Bond Leather Co. v. Q.T. Shoe Manufacturing Co.*, 764 F.2d 928 (1st Cir. 1985), for the proposition that merely serving as the guarantor of a contract with a relationship to the forum state does not amount to minimum contacts. However, there is an exception to this rule where, as here, the guarantor has a financial interest in the business or person whose obligation it guarantees. *National Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1138 (6th Cir.1982).[6] Moreover, even if the Court were to follow *Bond Leather*, that case would not require a holding for defendants. The First Circuit in *Bond Leather* based its ruling on the fact that the defendant's *sole* contact with the forum state in that case was the guarantee; under the "contracts plus" approach, some "supplemental contacts" would be required to sustain jurisdiction. *See* 764 F.2d at 933–34. As discussed above, such supplemental contacts are present in the case at bar.[7]

KCSI cites the Missouri choice-of-law provision in the Stock Purchase Agreement in support of its argument that KCSI has negligible contacts with New Jersey. There is ample authority holding that a choice-of-law provision favoring the forum state weighs in favor of jurisdiction. *E.g., Southwest Offset, Inc. v. Hudco Publishing Co.*, 622 F.2d 149, 152 (5th Cir.1980); *Alchemie*, 523 F.Supp. at 1051 & n. 31. What KCSI argues, however, is that the converse is also true: that a choice-of-law provision in favor of a state other than the forum state weighs against the jurisdiction of a court in the forum state. For this

---

5. The Court notes that in a related lawsuit against KCSI arising out of the propranolol venture, KCSI has attempted to assert that the United States District Court for the District of New Jersey does not have personal jurisdiction over it. *Schering Corp. v. Martec Pharmaceuticals, Inc.*, Civ. No. 88–2100 (D.N.J.). In a Report and Recommendation to Judge Ackerman dated August 19, 1988, Magistrate Chesler rejected KCSI's arguments and found sufficient contacts with New Jersey to sustain jurisdiction. KCSI has objected to the Magistrate's Report. As of this date, however, Judge Ackerman has not yet ruled on whether to adopt the Report.

6. In addition, there is an exception in New Jersey where, as here, plaintiffs would not have entered into the contract at all without the assurances of the guarantor. *See Unicon Investments v. Fisco, Inc.*, 137 N.J.Super. 395, 403, 349 A.2d 117, 122 (Law Div.1975).

7. Under *Bond Leather*, the mere fact that the company whose obligations are guaranteed is a subsidiary of the guarantor may be sufficient supplemental contacts. The *Bond Leather* court cited two cases in which the guarantor-defendant either was an agent for, or had a substantial interest in, the corporation whose obligations it was guaranteeing. *Salter v. Lawn*, 294 F.Supp. 882 (D.Mass.1968); *First National Bank of Boston v. Bergreen*, 11 Mass.App. 956, 417 N.E.2d 50 (1981); *see Bond Leather*, 764 F.2d at 934. The manner in which the First Circuit cited these cases indicates its view that an agency relationship with, or a financial interest in, the corporation whose obligations were being guaranteed would amount to the requisite "supplemental contacts" if the latter corporation had a sufficient relationship of its own with the forum state. Such is the situation in the case at bar.

Of course, KCSI's relationship with New Jersey goes well beyond its subsidiary relationship with Brighton, as already discussed.

point KCSI cites *J.I. Kislak, Inc. v. Trumbull Shopping Park, Inc.*, 150 N.J.Super. 96, 101–02, 374 A.2d 1246, 1249 (App.Div. 1977). The Court need not determine whether this converse proposition is valid in general because in the case at bar KCSI has numerous other significant contacts with New Jersey, as already discussed. *Cf. Kislak,* 150 N.J.Super at 101–02, 374 A.2d at 1249 (where the "overall kernel" of the parties' relationship was outside the forum state). Moreover, KCSI fails to acknowledge that the Stock Purchase Agreement provides an exception to the applicability of Missouri law, to wit: "stock transfer taxes ... shall be governed by the laws of the State of New Jersey and title transfer shall be deemed to have occurred in New Jersey." Agreement § 12.08. By dint of this exception clause, KCSI has, at least to some extent, "purposefully availed" itself of the benefits of New Jersey law.

### 2. *Defendant Brighton*

■ Much of the above discussion concerning KCSI applies as well to Brighton. For example, plaintiffs cite the partial choice of New Jersey law as a Brighton contact with New Jersey. Furthermore, plaintiffs have alleged not only that KCSI and MPI are interchangeable, but also that Brighton is interchangeable with both KCSI and MPI. In support of this contention, plaintiffs cite a document that KCSI filed with the Securities and Exchange Commission in which KCSI implied that it owned MPI directly, without mention of Brighton's (or L.M. Johnson Co.'s) status as an intermediate owner; and in which KCSI stated that it was Martec, and not Brighton, that bought out plaintiffs' interest in the joint venture.[8]

The Court need not determine whether the above contacts alone are sufficient because plaintiffs have shown a broader Brighton contact with New Jersey suffi-

cient in itself to sustain jurisdiction over Brighton: Brighton had a certificate of authority to conduct business in New Jersey from August 1, 1984 to December 31, 1985 (the day after the Stock Purchase Agreement was executed). Plaintiffs' Opposition Memorandum, Exh. F. In order to procure such a certificate, Brighton designated an agent for service of process within New Jersey. *See id.* Since the very purpose of designating such an agent was to make it possible for Brighton to be sued for causes of action arising from or related to its New Jersey activities, Brighton cannot claim that it could not reasonably have foreseen being haled into a New Jersey court by virtue of a contract to buy a New Jersey corporation from New Jersey residents. *Cf. Burger King,* 471 U.S. at 474–76, 105 S.Ct. at 2174–75. That the certificate is no longer valid is immaterial; what is crucial is that on the date Brighton entered into the Stock Purchase Agreement (December 30, 1985), Brighton had a valid certificate of authority to transact business in New Jersey. Thus the Court finds sufficient minimum contacts between Brighton and New Jersey to sustain jurisdiction over Brighton, at least for this cause of action, which arose out of or was related to Brighton's contacts with New Jersey.

### (B) Consideration of Other Factors

Having found minimum contacts, the Court now turns to the consideration of the "other factors" listed in *Burger King* to determine whether the assertion of jurisdiction over KCSI and Brighton would comport with the concepts of fairness and justice inherent in the Due Process Clause. *See* 471 U.S. at 476–77, 105 S.Ct. at 2184.

■ With regard to the first factor, defendants allege that it would be burdensome for them to have to defend a lawsuit in New Jersey, on the ground that "the significant documents and non-party wit-

---

**8.** In the document, KCSI's "10K" filing with the SEC for the fiscal year ending December 13, 1985, KCSI stated:

In early August 1985, the [Food and Drug Administration] approved the application of the Registrant's [KCSI's] 65% owned subsidiary, Martec Pharmaceutical, Inc. ("Martec")

to sell propranolol [hydrochloride].... In December 1985, Martec, having a 75% interest in Martec Joint Venture, acquired the remaining 25% minority interest in that partnership [*i.e.,* USI].

Plaintiffs' Opposition Memorandum, Exh. D, at 2.

nesses are located in Missouri." However, despite this putative burden, KCSI's officers managed to travel to New Jersey in 1984 and 1985 on several occasions to conduct the business of the joint venture. Moreover, at oral argument, counsel for defendants could cite only one nonparty witness residing in Missouri whom defendants would call at trial—and that person was the attorney who negotiated the Agreement for defendants. Plaintiffs, on the other hand, plan to call several nonparty residents of New Jersey.[9] While recognizing a burden on defendants, therefore, the Court does not find it "compelling." *Cf. Burger King,* 471 U.S. at 477, 105 S.Ct. at 2185.

■■■ Consideration of the second factor indicates that New Jersey does have a significant interest in the dispute. At issue is a contract that involved New Jersey citizens on one side and deemed a transfer of title of stock to have taken place in New Jersey. New Jersey has a strong interest in providing a forum to enforce the contractual obligations of parties who contract with New Jersey residents. *See Alchemie,* 523 F.Supp. at 1052. Moreover, the corporation whose stock was transferred under the contract (USI) was a New Jersey corporation that was engaged in a joint venture for the sale of pharmaceutical products in New Jersey; this reinforces New Jersey's interest in the dispute.

■■■ With regard to the only other relevant factor, plaintiffs' interest in obtaining convenient and effective relief, it has already been noted that plaintiffs themselves, as well as some of the possible non-party witnesses, reside in New Jersey. Therefore plaintiffs have a valid interest in preserving their chosen forum, a New Jersey federal court.

Since none of the above supplementary considerations destroy the fairness under the Due Process clause of subjecting KCSI

and Brighton to jurisdiction in New Jersey,[10] their motion to dismiss the complaint for lack of in personam jurisdiction will be denied.

## II. *The Motions to Transfer*

As an alternative to their motions to dismiss, defendants move this Court to transfer the instant action to the Western District of Missouri pursuant to 28 U.S.C. § 1404(a). That section provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Plaintiffs do not dispute defendants' contention that this action could have originally been brought in the Western District of Missouri.

The decision whether to transfer an action rests in the sound discretion of the trial court. *Plum Tree, Inc. v. Stockment,* 488 F.2d 754, 756 (3d Cir.1973). In making its determination, the Court is aided by a host of factors spelled out by the Supreme Court in *Gulf Oil v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The factors fall into two groups: those relating to the convenience of the litigants, and those affecting the public interest in the fair, efficient administration of justice. Factors in the first group are (1) plaintiffs' choice of forum, (2) ease of access to sources of proof, (3) the availability and cost of compulsory process for unwilling witnesses, (4) the enforceability of any possible judgment, (5) any obstacles to a fair trial, (6) the availability of impleader, and (7) in general, all other factors relating to the expeditious and efficient adjudication of the dispute. Factors in the second group include (1) the relative backlog and other administrative difficulties in the two jurisdictions, (2) the fairness aspect of placing the burdens of jury duty on the citizens

---

**9.** At oral argument, counsel for plaintiffs stated his intention to call as witnesses several employees who work at the New Jersey offices of the Zenith and Schering companies; these companies did business with the Martec–USI joint venture.

**10.** The Court finds the two final *Burger King* factors—the interstate judicial system's interest in efficiency and the shared interests of New Jersey and Missouri in furthering substantive social policies—to be neutral in the instant case.

of the state with the greater interest in the dispute, (3) the local interest in adjudicating localized disputes, and (4) the appropriateness of having the jurisdiction whose law will actually govern the dispute adjudicate the dispute in order to avoid difficult problems in conflicts of laws. *Id; see Hardaway Constructors v. Conesco Industries,* 583 F.Supp. 617, 619–20 (D.N.J.1983).

 In weighing the above factors, it is important to note that the general rule is that unless the balance is strongly tipped in favor of transfer, the plaintiffs' choice of forum should be honored. *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843; *Hardaway,* 583 F.Supp. at 620. Defendants cite *National Surety Corp. v. Robert M. Barton Corp.,* 484 F.Supp. 222, 224 (W.D. Okla. 1979), for the proposition that plaintiffs' choice should be given less weight in the absence of significant contacts between defendants and the forum state. In light of the Court's determination that significant contacts do exist, *National Surety* is inapplicable to the case at bar. That aside, the most significant factor cited by defendants is "ease of access to sources of proof." While conceding that the parties are equally divided between the two forums, defendants contend that all of the nonparty witnesses reside in Missouri. As already noted, however, oral argument revealed that there are few facts to back this assertion. As also noted, plaintiffs counter that they intend to call nonparty witnesses residing in New Jersey, and have been more forthcoming with specifics. Moreover, although the contract was primarily negotiated and executed in Missouri, the formation of a contract is not the type of activity for the evaluation of which a factfinder needs to visit the place where the activity occurred. *Cf. Rutherford v. Sherburne Corp.* 616 F.Supp. 1456, 1463 (D.N.J.1985) (where, on a motion to transfer a personal injury case, the court noted that "a view of the accident scene could be very helpful to a jury"); *Hardaway,* 583 F.Supp. at 621 ("[O]ne can only view this bridge in Maryland.").

The only other relevant consideration is the Missouri choice-of-law provision. Though this factor favors defendants'

cause, it does not tip the balance in their favor or overcome the presumption that plaintiffs' choice of forum should not be disturbed. Therefore defendants' motion to transfer will be denied.

## CONCLUSION

For the reasons set forth above, the Court denies defendants' motion to dismiss for lack of personal jurisdiction and denies defendants' alternative motion to transfer this action to the Western District of Missouri.

Plaintiffs shall submit an appropriate order.